RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0167P (6th Cir.)
File Name: 04a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*    No. 01-5997

LEON COMBS,
  *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 01-00017—Joseph M. Hood, District Judge.

Submitted: September 19, 2003

Decided and Filed: June 4, 2004

Before: SILER, BATCHELDER, and COOK, Circuit
Judges.

---

**COUNSEL**

**ON BRIEF:** Keely J. O'Bryan, John T. Sunderland,
THOMPSON HINE, Columbus, Ohio, for Appellant. Charles
P. Wisdom, Jr., ASSISTANT UNITED STATES
ATTORNEY, Lexington, Kentucky, for Appellee. Leon
Combs, Manchester, Kentucky, pro se.

---

**OPINION**

---

COOK, Circuit Judge. Defendant-Appellant, Leon Combs,
appeals his conviction on two counts of trafficking drugs with
the involvement of a firearm and two counts of possession
and distribution of drugs. We reverse Combs's conviction on
Count III, finding the indictment insufficient as failing to
charge him with a criminal offense. As to his indictment on
Count IV, we find it to have been impermissibly amended and
thus also reverse his conviction on Count IV. We affirm
Combs's conviction on the remaining counts.

On January 25, 2001, a grand jury returned a five-count
indictment against Combs. A jury then convicted Combs of
Counts I through IV of the indictment. Count I charged a
violation of 21 U.S.C. § 841(a)(1) and alleged that Combs
possessed and distributed OxyContin, a schedule II controlled
substance. This Count concerned a November 14, 2000
incident where Joyce Eversole, a cooperating witness, made
a controlled buy of 25 OxyContin pills from Combs. On that
date, the police gave Eversole $1000 in "buy" money and
drove her to a meeting with Combs. Once there, Eversole
entered Combs's car and rode a short distance with him.
Combs then exited the car and told Eversole that he was
going to meet a man who would supply him with the pills.
When Combs returned, he sold the pills to Eversole. Eversole
turned the pills over to the police.

Count IV alleged a violation of 18 U.S.C. § 924(c) and
provided that Combs "in furtherance of a drug trafficking
crime . . . did unlawfully possess firearms. . . ." This Count
stems from an incident in late 2000 or early 2001 when Josh
Miller traded three of his father's rifles with Combs for drugs.
Miller told the police about these and other trades of guns for
drugs and said that many of these transactions took place at
Combs's residence. After learning about these trades, the

police obtained a warrant to search the residence. During the search, the police recovered the guns that Miller traded for the drugs.

During the search of the residence, officers observed Combs dropping an object down the front of his pants. Upon searching Combs, the police found that he was carrying a loaded .22 caliber pistol and many OxyContin and Dialudid pills. This discovery led to Count II, alleging a violation of 21 U.S.C. § 841(a)(1) and charging Combs with possession of schedule II drugs, OxyContin and Dialudid, with the intent to distribute. Count III followed from the loaded pistol; the count alleged an additional violation of 18 U.S.C. § 924(c) and provided that Combs "during and in relation to a drug trafficking crime . . . did possess a . . . pistol . . ." at the time of his search.

## WHETHER 18 U.S.C. § 924(c) CRIMINALIZES TWO SEPARATE OFFENSES

The issue of whether or not § 924(c) criminalizes two distinct offenses directs the outcome of Combs's primary challenges to his conviction. Counts III and IV of Combs's indictment (firearms charges) purport to set forth violations of 18 U.S.C. § 924(c). To clarify the ensuing analysis of Combs's challenge, we first dissect the statute, labeling the two allegedly distinct offenses:

. . . [A]ny person who, **during and in relation to** any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, **uses or carries** a firearm, ("use" offense)

or

who, **in furtherance of** any such crime, **possesses** a firearm, shall, in addition to the punishment for such crime of violence or drug trafficking crime [receive an additional penalty]. ("possession" offense)

18 U.S.C. § 924(c) (emphasis added).

In an earlier § 924(c) case this court declined to decide whether this statute sets forth two separate offenses or simply specifies alternative means for committing the same offense. *See United States v. Davis*, 306 F.3d 398, 416 (6th Cir. 2002) (assuming, without deciding, that the statute sets forth separate offenses). In at least one case, however, we treated the two prongs of this statute as constituting two distinct offenses. *United States v. Nance*, 40 Fed. Appx. 59, 64–67 (6th Cir. 2002) (unpublished).[1] *See also United States v. Lott*, 310 F.3d 1231, 1246 (10th Cir. 2002);[2] *United States v. Timmons*, 283 F.3d 1246, 1250–53 (11th Cir. 2002) (also treating the statute as setting forth two separate offenses). The statutory text, legislative history, and requisite proof argue for the *Nance* perspective that 18 U.S.C. § 924(c) criminalizes two separate offenses—(1) *using or carrying* a firearm *during and in relation to* a drug trafficking crime, and (2) *possessing* a firearm *in furtherance of* a drug trafficking crime.

---

[1] In *Nance*, defendant challenged the denial of his motion for acquittal on a charge for violation of 18 U.S.C. § 924(c). This court examined whether a rational finder of fact could conclude *either* that defendant carried a firearm during and in relation to drug trafficking *or* that defendant possessed a firearm in furtherance of drug trafficking. The analysis defined the elements of each offense separately and concluded that, under the facts presented, the finder of fact could not have convicted under either prong of the statute. *Nance*, 40 Fed. Appx. at 64–67.

[2] In *Lott*, defendant's indictment charged that he "knowingly carried and possessed a firearm during and in relation to and in furtherance of a drug trafficking offense" in violation of 18 U.S.C. § 924(c). Defendant challenged the district court's denial of a motion for acquittal. Similar to our analysis in *Nance,* the Tenth Circuit held that the indictment contained two distinct offenses for which the jury could have found the defendant guilty. The court then examined the evidence and held that, under either the "carrying a weapon during and in relation to" or the "possession of a weapon in furtherance of" prong of the statute, there was sufficient evidence to convict defendant on this charge. *Lott*, 310 F.3d at 1246–48.

*Statutory Text*

The text of 18 U.S.C. § 924(c) belies the view that the statute simply identifies alternative means for committing a single offense. The two prongs of the statute are separated by the disjunctive "or," which, according to the precepts of statutory construction, suggests the separate prongs must have different meanings. *United States v. Hill*, 79 F.3d 1477, 1483 (6th Cir. 1996). *See also Stevens v. Employer-Teamsters Joint Council No. 84 Pension Fund*, 979 F.2d 444, 452 (6th Cir. 1992) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)).

Moreover, the statutory language structures the prohibited acts into distinct dependent clauses with different modifiers. The district court in *United States v. Pleasant*, 125 F. Supp. 2d 173, 178 (E.D. Va. 2000), comprehensively analyzed the statutory structure as follows:

The subject of the sentence at issue is "any person." The term "who" is a relative pronoun within the first dependent clause. The prepositional phrase "during and in relation to" modifies the relative pronoun; "uses or carries" are the compound verbs; and "firearm" is the direct object.

Rather than adding a second modifier to the first relative pronoun, (i.e. "Any person who, during and relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm, or in furtherance of any such crime, possesses a firearm"), the statute begins a second dependent clause with the second relative pronoun "who." This second pronoun is then modified by the separate phrase "in furtherance of any such crime." The verb in the second dependent clause is "possesses" and the direct object is again a "firearm."

The use of a second relative pronoun, the presence of a second dependent clause and the choice of different

modifiers for the prohibited conduct confirm that the second prohibited act is quite distinct from the first. In the first clause, the use or carriage of the firearm must be "during and in relation to" the predicate crime, while, in the second clause, the possession of the firearm must be "in furtherance of such crime."

*Legislative History*

Congress enacted the current version of the statute in 1998 in response to the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995). *See United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001). *Bailey* examined an earlier version of this statute that prohibited only "using or carrying a firearm during and in relation to" drug trafficking. 18 U.S.C. § 924(c)(1) (1994). The *Bailey* Court overruled several circuit court decisions upholding convictions under the "use" provision of the prior statute without requiring proof that the firearm was somehow actively employed during the drug trafficking crime. *Bailey*, 516 U.S. at 144. *Bailey* concluded that "use" of a firearm must mean more than mere possession and requires some active employment of the firearm by a person who commits a drug offense. *Bailey*, 516 U.S. at 143–44.

Congress regarded the *Bailey* decision as an "implicit invitation to clarify the statute." *Violent and Drug Trafficking Crime: The Effect of the Bailey Decision on Prosecution Under Section 924(c) Before the Senate Comm. on the Judiciary,* 104th Cong., 1st Sess. (statement of Thomas G. Hungar); *see also* 143 CONG. REC. S379-01 (daily ed. Jan. 21, 1997) (statement of Sen. Helms); *United States v. Speight*, 95 F. Supp. 2d 595, 598–99 (S.D. W. Va. 2000). Congress considered several bills with differing language before eventually adding the words "possess a firearm in furtherance of the crime." *See United States v. Pleasant*, 125 F. Supp. 2d 173, 180–81 (E.D. Va. 2000) (summarizing the differing approaches of several bills and noting that Congress rejected proposed language that merely added possession to the list of

prohibited actions, without requiring that possession be "in furtherance of" the crime).

The legislative history of the amendment bolsters the view that Congress intended "in furtherance of" to create a different standard of conduct than did the "during and in relation to" language. From the House Committee Report we know that members regarded "in furtherance of" as a slightly higher standard, encompassing the "during and in relation to" language. H.R. REP. NO. 105-344, at 11 (1997). "The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense." *Id.* at 12. *See also Mackey*, 265 F.3d at 461. By its adding possession as a prohibited act, and requiring a higher standard of participation to charge a defendant with the act, we understand Congress to have delineated a new offense within the same statute.

*Different Proof Required for Each Offense*

Courts test the presence of separate offenses by asking if each requires proof of an additional fact that the other does not. *Davis*, 306 F.3d at 415–16. This Circuit's decisions require the government to present different proof to show "using or carrying a firearm during and in relation to" a drug trafficking crime from that required to show "possession of a firearm in furtherance of" a drug trafficking crime.

a.  *Use offense - "Using or carrying . . . during and in relation to"*

As discussed above, the Supreme Court interprets "use" of a firearm as "connot[ing] more than mere possession of a firearm" and requires some active employment of the firearm by the person committing the drug offense. *Bailey*, 516 U.S. at 143. And in *Muscarello v. United States*, 524 U.S. 125 (1998), the Supreme Court interpreted the statutory term "carry" to mean the firearm must be on the person or accompanying the person, as when "a person . . . knowingly

possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car. . . ." *Id.* at 126–27. *See also United States v. Clemons*, 9 Fed. Appx. 286, 290 (6th Cir. 2001) (unpublished). After *Muscarello*, this court concluded that, to constitute a "carrying" offense, the firearm need not be immediately available for use and that "the proper inquiry [in determining whether a firearm is being 'carried'] is physical transportation" of the firearm. *Hilliard v. United States*, 157 F.3d 444, 449 (6th Cir. 1998).

The "during and in relation to" element requires that the firearm "furthered the purpose or effect of the crime and its presence or involvement was not the result of coincidence." *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999). *See also Smith v. United States*, 508 U.S. 223, 238 (1993).

b.  *Possession offense - "Possession . . . in furtherance of"*

In *Mackey*, 265 F.3d at 461–62, we interpreted the "in furtherance of" language as requiring a higher standard of participation than the "during and in relation to" language, holding that the government must show that the "firearm was possessed to advance or promote the commission of the underlying [drug trafficking] offense." The *Mackey* court went on to require "a specific nexus between the gun and the crime charged." *Id.* at 462. It opined that guns strategically located for quick and ease of use would demonstrate "possession in furtherance of." *Id. Mackey* also listed some indicative factors for examining whether the possession was "in furtherance of" the crime, including: (1) whether the firearm was loaded; (2) the type of firearm; (3) whether the weapon was stolen or legitimately possessed; (4) the type of drug activity conducted; and (5) the time and circumstances under which the gun was found. *Id.*

The Fifth Circuit cogently set forth circumstances that might violate the "during and in relation to" prong of the statute, but not the "in furtherance of" prong.

There are situations where a possession would be "during and in relation to" drug trafficking without "furthering or advancing" that activity. For example, a drug buyer might steal a gun from his dealer's house during a deal. The buyer's possession would be during and in relation to drug trafficking, but the buyer's possession would not advance that operation. As another example, if a buyer came to the seller's home for a purchase and left a gun there by mistake, the seller's possession would be "during and in relation to" the trafficking without furthering it.

*United States v. Ceballos-Torres*, 218 F.3d 409, 413 (5th Cir. 2000).

In keeping with the view of the *Nance* court, we conclude that "in furtherance of" differs from "during and in relation to" and requires the government to prove a defendant used the firearm with greater participation in the commission of the crime or that the firearm's presence in the vicinity of the crime was something more than mere chance or coincidence. Although the differences between the standards are "subtle"[3] and "somewhat elusive,"[4] they exist nonetheless. Considering all the foregoing, we confirm here that 18 U.S.C. § 924(c) criminalizes two separate and distinct offenses.

## DISTRICT COURT PROCEEDINGS

Both the government and the district court confused the elements of the two offenses criminalized by 18 U.S.C. § 924(c) throughout Combs's proceedings. Indeed, any attempt to unwind the mismatched elements of the statutory prongs in the indictment, the jury instructions, and the

---

[3] H.R. REP. NO. 105-344, at 11 (1997).

[4] *Mackey*, 265 F.3d at 461.

conviction, exposes the hopelessly "jumbled mess" that resulted. *See Pleasant*, 125 F. Supp. 2d at 183.

*Count III - Sufficiency of the Indictment*

We review the sufficiency of an indictment de novo. *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999) (citations omitted). When an indictment goes unchallenged until appeal, it must be liberally construed in favor of its sufficiency. *Id*. Furthermore, unless the defendant can show prejudice, a conviction will not be reversed when the indictment is first challenged on appeal unless the indictment cannot reasonably be construed to charge a crime. *Id*.

Count III of Combs's indictment charged him with "possess[ing] a firearm during and in relation to" a drug trafficking crime—utilizing one element from each of the two distinct § 924(c) offenses. Indicting Combs based on the *conduct* from the § 924(c) "possession" offense in conjunction with the *standard of participation* (during and in relation) from the other "use" offense results in a failure to charge him with *any* codified federal crime. The court's jury instructions for Count III tracked the indictment error, likewise intermixing elements of the two different crimes. Then to further confuse matters, when the court *defined* the "during and in relation to" standard of participation, it employed a definition more akin to this circuit's definition of "in furtherance of." And, finally, the court journalized Combs's Count III conviction as a "use" offense, not the "possession" offense found in the flawed indictment.

The government initially conceded error in this case and alleged that, due to the confessed errors, Combs was entitled to a new trial on the firearms violations because of the indictment's failure to charge an offense in Count III. But some seven months after filing its original brief, the government, with leave of court, filed a substitute brief withdrawing its concession of error and instead arguing the correctness and sufficiency of the indictment or, in the

alternative, urging resolution based on harmless error. The government's substitute brief argues the recognized similarities between the "during and in relation to" and the "in furtherance of" elements of § 924(c), citing our *Mackey* decision and the Tenth Circuit's *Avery* decision. *See Mackey*, 265 F.3d 461–62; *United States v. Avery*, 295 F.3d 1158, 1174–75 (10th Cir.), *cert. denied*, 537 U.S. 1024 (2002). These similarities, coupled with the liberal standard an appellate court must apply to post-verdict indictment challenges, the government posits, allow the indictment for Count III to be reasonably construed as charging Combs with the "possession" offense. We disagree. Unlike Combs's case, *Mackey* concerned the sufficiency of the *evidence* and requisite standard of proof necessary to support a possession conviction under § 924(c), not the sufficiency of the *indictment*. The government's reliance on *Avery* is similarly misplaced for reasons unrelated to the sufficiency of the indictment, as will be discussed in conjunction with our analysis of Count IV.

Because Combs's indictment on Count III cannot be reasonably construed to have charged him with a crime under federal law, we reverse his conviction and remand to the district court to dismiss the indictment for failure to charge an offense.

*Count IV - Amending the Indictment*

Unlike Count III, Count IV of the indictment properly charged a § 924(c) possession offense. The jury instructions, however, again cross-matched the conduct from the "possession" offense with the standard of participation from the wholly distinct "use" offense:

There are two essential elements which must be proven beyond a reasonable doubt in order to establish the offense proscribed by this law:

First: That on or about the date and place alleged in the indictment, the defendant, Leon Combs *possessed a firearm*, (from the "possession" offense) and

Second: That he did so *during and in relation to* (from the "use" offense) a drug trafficking crime.

J.A. at 68 (emphasis added).[5] And again, in its instructions on this Count, the court defined the requisite conduct for finding the "use" offense rather than the "possession" offense charged by this Count of the indictment by saying: "A person who trades a firearm for drugs *uses* the firearm during and in relation to a drug trafficking offense." J.A. at 68–69 (emphasis added).[6] Plus, the pertinent "Judgment In a Criminal Case" reflects Combs being convicted on Count IV for the "use" offense as opposed to the "possession" offense for which he was indicted.

In its original brief, the government concluded that the district court's incorrect jury instructions had constructively amended Count IV of the indictment. It recanted that position in its substitute brief and now urges that the jury instructions did not constructively amend Count IV, nor Count III (assuming sufficiency of the Count III indictment).

A grand jury's indictment protects three constitutional due process rights, namely: the Sixth Amendment's right to fair

---

[5] The jury instructions also improperly referred to Count II as the predicate offense for this violation. The district court corrected this misstatement later and properly instructed that the sale of drugs in exchange for firearms to Josh Miller was the predicate offense for Count IV.

[6] Combs argues that, by this language, the district court improperly defined "use," citing *United States v. Warwick*, 167 F.3d 965 (6th Cir. 1999). Combs argues that passive receipt of a firearm in exchange for drugs does not constitute "use" of the firearm. However, because "use" was not at issue in this case and, due to our disposition of the other alleged errors, we need not reach this issue.

notice of the criminal charges against which one will need to defend; and the Fifth Amendment's dual protections against twice placing a defendant in jeopardy for the same offense, and holding the defendant to answer for crimes not presented to or indicted by a grand jury. *United States v. Pandilidis*, 524 F.2d 644, 648 (6th Cir. 1975). Accordingly, "the rule preventing the amendment of an indictment should be applied in a way that will preserve these rights from invasion; where these rights are not threatened, rules governing indictments should not be applied in such a way as to defeat justice fairly administered." *Id*.

This court recognizes two forms of modification to indictments: amendments and variances. Amendments occur "when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed on them." *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989) (citations omitted). Amendments are considered prejudicial per se, warranting reversal of a conviction, because they "directly infringe upon the fifth amendment guarantee" to hold a defendant answerable only for those charges levied by a grand jury. *Id*. Variances, however, occur "when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment" and are not reversible error unless the defendant can prove it prejudiced his defense. *Id. See also United States v. Hathaway*, 798 F.2d 902, 910–11 (6th Cir. 1986) (citations omitted). Between these distinctions lies a more subtle modification to the indictment, a constructive amendment, which is what the government argues occurred here. Constructive amendments are variances occurring when an indictment's terms are effectively altered by the presentation of evidence and jury instructions that "so modify essential elements of the offense charged that there is a substantial likelihood the defendant [was] convicted of an offense other than that charged in the indictment." *Hathaway*, 798 F.2d at 910. *See also United States v. Beeler*, 587 F.2d 340 (6th Cir. 1978).

Applying these precepts to Combs's case, we conclude that an impermissible amendment of Count IV of the indictment occurred. Though indicted on a charge of unlawful possession of a firearm under § 924(c), he was nevertheless convicted of a different offense—unlawful use and carrying of a firearm. We categorize this as an indictment "literally altered" by the court, constituting per se prejudice to the defendant. The jury instructions facilitated the amendment, first intermixing elements of both offenses, then providing a supplemental explanation aligned with the unindicted "use" offense, for which Combs was ultimately convicted, instead of the "possession" offense, for which he was originally indicted. We reject the government's argument that what occurred was a variance, in the form of a constructive amendment, that resulted in no prejudice to Combs. Because the record establishes that Combs was convicted of an offense that was not the subject of his indictment, his conviction on Count IV must be reversed.

Finally, with the benefit of the foregoing review of the law concerning modification of indictments, we return to our Count III analysis to distinguish the factually similar, but legally dissimilar, *Avery* case. The government views *Avery* as support for labeling Count III a constructive amendment—harmless in light of the evidence presented against Combs. Though *Avery's* indictment suffered from the identical mismatch of § 924(c) elements as does Combs's Count III, the difference between our conclusion of insufficiency and the Tenth Circuit decision to uphold the *Avery* indictment on the basis that "in furtherance of" and "during and in relation to" carry substantially the "same import," is explained by our circuit's assessment, both here and in *Nance*, that § 924(c) criminalized two distinct offenses. Moreover, *Combs* differs from *Avery* in another crucial aspect. Avery, unlike Combs, was indicted on and convicted of a "possession" offense, whereas Combs was indicted on a "possession" offense, but was later convicted of a "use" offense.

*Combs's Claims Regarding Count I*

Combs next alleges that his indictment on Count I was only obtained through perjured testimony and that there was insufficient evidence supporting his conviction on that Count. We disagree.

With respect to the perjured testimony, Combs insists the police officer testified falsely to the grand jury. But Combs forfeited this issue by not raising it before trial. FED. R. CRIM. P. 12(b)(3)(B) & (e); *United States v. Mack*, 892 F.2d 134, 135–36 (1st Cir. 1989). Furthermore, any indictment defect generated by alleged perjured testimony was cured by the jury's verdict that Combs was guilty of this offense. *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996) (citing *United States v. Mechanik*, 475 U.S. 66, 71-73 (1986)).

Combs also argues as to his Count I conviction that the government presented inadequate evidence—that the testimony of the police officer who advised and directed Eversole's activities was insufficient because of a faulty investigation. Combs also challenges the credibility of Eversole's testimony. To obtain a conviction under this Count, the government needed to prove that Combs knowingly or intentionally possessed a controlled substance with the intent to distribute. 21 U.S.C. § 841(a)(1).

The jury had the best opportunity to judge the credibility of these witnesses, and we must draw all reasonable inferences consistent with its verdict. *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997). If believed, these witnesses provided ample evidence that: Eversole contacted Combs to obtain OxyContin; Combs drove Eversole to a meeting with his supplier of OxyContin; Eversole hid in the car while Combs made a purchase; and Combs returned to the car and sold the pills to Eversole. This testimony sufficed for the jury to have properly convicted Combs on Count I.

Combs next challenges the adequacy of the warrant issued to search his residence, calling it deficient so as to entitle him to suppression of evidence the search produced. This court reviews a district court's decision on a motion to suppress under two complementary standards. *United States v. Leake,* 998 F.2d 1359, 1362 (6th Cir. 1993). First, we must uphold the district court's factual findings unless clearly erroneous. *United States v. Hill,* 195 F.3d 258, 264 (6th Cir. 1999). Second, legal conclusions as to the existence of probable cause are reviewed de novo. *Id.* In reviewing the district court's decision, the evidence must be viewed in the light most favorable to the government. *United States v. Walker*, 181 F.3d 774, 776 (6th Cir. 1999).

Combs also objects to the affidavit used to obtain the warrant, claiming it mischaracterized as "stolen" the guns that Josh Miller traded for drugs. Combs argues that because neither Josh Miller nor his father, Ed Miller, told the police that the guns were "stolen," that aspect of the affidavit was false, invalidating the warrant and entitling him to suppression of the evidence gained thereby. Under Rule 12(b)(3)(C) & (e) of the Federal Rules of Criminal Procedure, Combs also forfeited this alleged error because he did not raise it in his original motion to suppress. Moreover, it is immaterial to the suppression question whether or not the guns were "stolen." Josh Miller testified that he traded Combs certain guns for OxyContin, and the warrant permitted a search to find the guns—stolen or not—plus any other evidence of illegal drug activity.

Combs next argues that the search warrant lacked probable cause because it was issued based on an affidavit lacking information about the informant's reliability. "An issuing judge's findings of probable cause should be given great deference by the reviewing court and should not be reversed unless arbitrarily exercised." *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002), *cert. denied,* 123 S. Ct. 2261 (2003) (citations omitted). As long as the issuing judge had a "substantial basis" for determining that a search would

uncover evidence of wrongdoing, the warrant must be upheld. *Id.*

This court recognizes that "[w]hen a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search [of that location]." *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986), *cert. denied,* 479 U.S. 1092 (1987). We have reaffirmed this principle in upholding the issuance of a warrant, where an affidavit lacked information about the named informant's reliability. *See Miller*, 314 F.3d at 270; *United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir.), *cert. denied,* 522 U.S. 925 (1997).

Josh Miller was known to the police. He informed them that he had recently traded guns with Combs for OxyContin, and his statements corroborated other information the police already had, such as Eversole's prior purchase of OxyContin from Combs. Thus, probable cause supported the issuance of the warrant.

*Evidentiary Issue Regarding Firearms*

Combs claims that the district court improperly admitted into evidence: (1) the firearms seized from Combs's home; (2) other firearms stolen from I. J. Sandlin; and (3) the testimony of I. J. Sandlin. This court reviews these claims for plain error because Combs failed to object to the introduction of this evidence at trial. *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992).

Combs first claims that because the police released the seized guns to their owner, Edward Miller (Josh Miller's father) after their search of his home, the break in the chain of custody should render the guns inadmissible.

Physical evidence is admissible when the possibility of misidentification or alteration is "eliminated, not absolutely,

but as a matter of reasonable probability." *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997) (citations omitted). Merely raising the possibility of tampering or misidentification is insufficient to render evidence inadmissible. *United States v. Kelly,* 14 F.3d 1169, 1175 (7th Cir. 1994). Furthermore, "challenges to the chain of custody go to the weight of the evidence, not its admissibility." *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir. 1990), *cert. denied*, 498 U.S. 1091 (1991).

Edward Miller testified that the guns admitted into evidence were the same guns taken from his residence, returned to him after the search, and later returned to the government for trial. The police officer in charge of executing the search warrant and cataloging evidence testified that the guns were the same guns recovered from Combs's residence. The trial court properly determined that there was no reasonable probability of misidentification. It was not plain error to admit them.

Combs next argues irrelevance ought to have foreclosed the testimony of I. J. Sandlin, and the admission of Sandlin's four guns. Sandlin was a government witness who testified that his four guns had been stolen. His nephew, Josh Miller, admitted that he had taken these four guns from Sandlin's residence. Josh Miller also testified that, in addition to trading the three guns owned by Ed Miller that were the subject of the indicted offenses with Combs, he had traded other guns with Combs on different occasions. Although Josh Miller never testified that he had traded these particular four guns with Combs, Officer Chris Fugate testified that at least two of these guns were turned over to police by Combs about a week after the search of his residence and his arrest. Because they were relevant to Josh Miller's pattern of taking guns from relatives and trading them with Combs for drugs and because at least two of them were turned over by Combs, it was not plain error for the district court to admit them into evidence.

Combs finally argues that an additional gun listed on the search inventory but not the subject of any charged offense should not have been admitted. Although this gun, owned by Ed Miller, was listed on the search inventory as being found in Combs's residence, Josh Miller testified that he pawned this gun and had not traded it to Combs. Ed Miller also testified that one of his guns had been recovered from a pawn shop, but did not specify which one. Combs argues that this gun was "planted" by police and was "fabricated evidence."

It was for the jury to determine, based upon its assessment of the witnesses' credibility, whether the gun was found in Combs's residence, as alleged by the government, or pawned by Josh Miller. The gun was also relevant to Josh Miller's pattern of taking guns from relatives for use in support of his drug habit. It was not plain error for the district court to admit it into evidence.

### Alleged Prosecutorial Misconduct

Combs next argues that the prosecutor obstructed justice by halting an internal-affairs investigation Combs requested. Combs asserts that this deprived him of "access to legal findings that very possibly could have changed the course of his court trial." He also alleges that he was told that he would have to prove himself innocent at trial.

Both of these acts of alleged misconduct took place prior to trial but Combs never raised them before the district court. That failure forecloses his opportunity to challenge them now. FED. R. CRIM. P. 12(b)(3) & (e). Moreover, Combs provides no evidence of wrongdoing on the part of the prosecutor and fails to explain how the internal-affairs investigation could have affected his trial and conviction. And any misstatement regarding the burden of proof at trial did not prejudice Combs, as the jury was properly instructed that the government must prove Combs guilty beyond a reasonable doubt.

### "Drug Addict" Jury Instruction

Combs next contends he should have a new trial because the district court should have given a "drug addict" jury instruction regarding the reliability of Eversole's and Josh Miller's testimony. We review this claim for plain error because Combs did not request an addict instruction at trial. *United States v. Morrow*, 977 F.2d 222, 226 (6th Cir. 1992).

"This court has long recognized the importance of an addict-informant instruction in appropriate cases." *United States v. Brown*, 946 F.2d 1191, 1195 (6th Cir. 1991). No per se rule, however, requires that an addict-informant instruction be given in all cases involving the testimony of an addict-informant. Instead, "the need for such an instruction depends on the circumstances of each case." *Id*. Further, there is less need for a special jury instruction about the credibility of an addict-informant where the jury is aware that the witness is an addict and where there was substantial corroboration for the witness's testimony. *United States v. McGhee*, 882 F.2d 1095, 1100 (6th Cir. 1989).

Both Eversole and Miller admitted that they had abused controlled substances. Additionally, the testimony of the police officer directing Eversole's purchase of OxyContin from Combs and the evidence found after executing the search warrant corroborated their testimony. Furthermore, the court gave a specific instruction about both of these witnesses' credibility because one was a paid informant and one was involved in the same crime as Combs. The court instructed the jury to consider the testimony of these two witnesses with more caution than the testimony of other witnesses.

Because the jury knew that the witnesses were drug users, evidence corroborated their testimony, and the court instructed the jury specifically to consider these witnesses' testimony with caution, we find no plain error in the district court's failure to give an addict instruction.

*Expert Testimony of Dan Smoot*

Combs contends that the trial court erred in admitting the testimony of Dan Smoot in violation of Rules 702 and 704(b) of the Federal Rules of Evidence. Combs claims that Smoot, a narcotics officer with the Kentucky State Police testifying as the government's expert, impermissibly testified regarding Combs's intent to distribute narcotics.

We have held that "[l]aw enforcement officers may testify concerning the methods and techniques employed in an area of criminal activity and to establish 'modus operandi' of particular crimes. Knowledge of such activity is generally 'beyond the understanding of the average layman.'" *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990) (citations omitted). Rule 704(b), however, prevents an expert witness from testifying that a defendant in a criminal case did or did not have the requisite mental state or condition constituting an element of the crime charged, as ultimate issues are matters for the trier of fact.

> Decisions applying Rule 704(b) to the expert testimony of law enforcement officials have found it significant whether the expert actually referred to the intent of the defendant or, instead, simply described in general terms the common practices of those who clearly do possess the requisite intent, leaving unstated the inference that the defendant, having been caught engaging in more or less the same practices, also possessed the requisite intent.

*United States v. Frost*, 125 F.3d 346, 383–84 (6th Cir. 1997) (citing *United States v. Lipscomb*, 14 F.3d 1236, 1239 (7th Cir. 1994)).

After reviewing Officer Smoot's testimony in its entirety, we conclude that he did not actually testify regarding the intent of the defendant to distribute drugs. Rather, he testified regarding conduct that would be consistent with an intent to

distribute and left to the jury the final conclusion regarding whether Combs actually possessed the requisite intent. The trial court, therefore, did not err in permitting this testimony.

*Ineffective Assistance of Counsel*

Combs last contends that his conviction should be reversed because he was denied the effective assistance of trial counsel. "Ordinarily, we do not review claims of ineffective assistance of counsel on direct appeal." *United States v. Shabazz*, 263 F.3d 603, 612 (6th Cir. 2001) (citation omitted). This rule stems from the insufficiently developed record regarding the defendant's legal representation that typically accompanies such a claim on direct appeal and the necessity that a successful claim show prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984); *Shabazz*, 263 F.3d at 612. For these reasons, we have held that a defendant best pursues a claim of ineffective assistance through a post-conviction proceeding brought under 28 U.S.C. § 2255. *United States v. Long*, 190 F.3d 471, 478 (6th Cir. 1999). If the record is adequate to permit review of counsel's performance, however, we will consider the issue even if not raised before the district court. *United States v. Goodlett*, 3 F.3d 976, 980 (6th Cir. 1993).

We view this record as inadequate to permit review of Combs's ineffective assistance of counsel claim.

### CONCLUSION

For the foregoing reasons, we reverse Combs's convictions on Count III and Count IV. We affirm the remainder of his conviction and remand this case to the district court for re-sentencing and further proceeding consistent with this opinion.