**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0715n.06

No. 07-4512

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 04, 2009
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

ANTROWN T. SIMMS,

  Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
NORTHERN DISTRICT OF
OHIO

**OPINION**

---

BEFORE:  MARTIN, GUY, and McKEAGUE, Circuit Judges.

  **McKEAGUE, Circuit Judge.** Defendant Antrown Simms appeals his jury conviction of being a felon in possession of a firearm. Simms argues that a reversible error occurred at trial because the electronic version of his indictment contained an incorrect offense date. He further argues that the district court reversibly erred in admitting into evidence an audio CD containing recorded telephone conversations. Finding no reversible error, we **AFFIRM**.

**I.**

  On November 9, 2005, Antrown Simms led Ohio adult parole officers on a short foot chase through a neighborhood in Mansfield, Ohio. He was eventually apprehended with a large amount of marijuana on his person and taken to the Richland County jail. During the chase, Simms passed by St. Peter's High School and, according to officers, appeared to alter his course as if to hide something. The following day a student at St. Peter's School notified a teacher that he spotted a

firearm in the school's parking lot.  The school in turn notified the Mansfield Police Department,

which collected the firearm.

Simms was connected to the discarded firearm through a series of recorded phone

conversations that he placed to the home of his girlfriend while he was an inmate at the Richland

County jail. The jail was in the habit of recording inmates' phone conversations, and one such

recording, placed from Simms's jail identification number to his girlfriend's house, captured the

following exchange:

> Female Voice: My sister came home and said one of the kids at
> school found your gun today.
> Male Voice:    What?
> Female Voice: Yeah. And he gave it to the teacher, and the teacher
> called the cops.
> Male Voice:    What?
> Female Voice: Yeah. And I been freaking out.
> Male Voice:    Did they know it was mine?
> Female Voice: I don't know what they told them. What I'm saying,
> is your prints and shit on there?
> Male Voice:    Hell, yeah. . . . When did he find it? Today?
> Female Voice: Yes. This morning. That's where you hid it?
> Male Voice:    Damn.

Simms was indicted by a grand jury for one count of being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1).

At trial, the prosecution played a CD containing clips of the recorded phone conversations.

The conversations had been copied from the jail's computer server to a CD by a computer specialist

with the Richland County Sheriff's Department, and the computer specialist gave the CD to a captain

within the Sheriff's Department, who in turn made multiple copies of the CD for various agencies

investigating Simms.  A copied version of the first CD, containing the captain's handwriting

identifying it as such, was introduced at trial as Exhibit 3. To establish the CD's authenticity, a detective with the Richland County Sheriff's Department testified that the captain had copied the first CD—the one obtained directly from the jail's server—and given it to the detective. The testifying detective identified the handwriting on Exhibit 3 as belonging to the captain and stated that he had listened to the first copy of the CD and portions of the second copied version used at trial. In addition, the computer specialist testified as to the process used by the jail to record inmates' conversations and the process she used to copy the first CD from the jail's computer server.

Just prior to jury instructions, Simms's attorney pointed out a flaw in the electronic indictment filed with the district court. Specifically, the indictment used at trial—and the only one available to Simms—contained an offense date of August 15, 2006. However, all of the evidence presented at trial, including that of Simms, focused on the foot chase of November 9, 2005. Apparently, the original indictment returned by the grand jury contained an offense date of November 9, 2005, but the date was mistakenly changed to August 15, 2006, when the indictment was electronically filed. While it is not entirely clear from the record how the error occurred, the district court determined that, in light of the signed indictment containing an offense date of November 9, 2005, the grand jury had indicted Simms for the November event.[1] The district court also found that Simms was not prejudiced by the mistake and instructed the jury using the November

---

[1]The district court apparently viewed the original indictment containing the actual signatures, yet for reasons inexplicable to us, the government has failed to file the original signed indictment with this court. However, this failure on the part of the government is irrelevant to the outcome of the case because Simms concedes that he was indicted for the events of November 2005.

2005 date. The jury returned a guilty verdict, and Simms received a 100-month prison sentence. This appeal followed.

**II.**

Simms makes two arguments on appeal. He first argues that he was deprived of his Sixth Amendment right to notice of the charges against him because the electronic indictment contained an incorrect offense date. He also argues that the district court reversibly erred in admitting into evidence the CD containing recorded phone conversations.

**A.     Error in Electronic Indictment**

"We review the sufficiency of an indictment *de novo*." *United States v. Combs*, 369 F.3d 925, 934 (6th Cir. 2004). Indictment by a grand jury protects an accused's Sixth Amendment right to notice of the charges against him as well as his Fifth Amendment rights against double jeopardy and against answering for crimes not indicted by a grand jury. *Id.* at 935. Accordingly, the rules governing indictments should be applied in a way to uphold these rights, but not in a way to defeat justice. *Id.* Simms does not argue that his Fifth Amendment rights have been violated; he concedes that the grand jury probably indicted him for the events of November 9, 2005. He argues only that his Sixth Amendment rights were violated. We bear this in mind when evaluating his claim.

The Sixth Circuit recognizes three types of modifications to an indictment: an actual amendment, a constructive amendment, and a variance. *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). The first type of modification, an actual amendment, occurs when the prosecutor changes the actual text of the indicting instrument. *Id.* The second type of modification, a constructive amendment, arises when the terms of the indictment are changed through the

presentation of evidence and jury instructions such that the essential elements of the offense charged have been changed. *Id.* This type of modification is *per se* prejudicial and always requires reversal. *United States v. Nance*, 481 F.3d 882, 886 (6th Cir. 2007). A variance, the final type of modification, "occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* at 886 (internal quotations omitted). Variances are not *per se* prejudicial and require reversal only if the defendant shows that a substantial right has been affected, such as his ability to defend himself at trial or to have a generally fair trial. *United States v. Kuehne,* 547 F.3d 667, 683 (6th Cir. 2008). The defendant bears the burden of showing that his substantial rights have been affected by a variance. *Id.* at 685.

While the exact nature of Simms's arguments are difficult to ascertain, he seems to contend that either a constructive amendment or a variance occurred in his case because the electronic indictment bore an August 2006 date but the evidence presented at trial focused on a November 2005 date. Simms does not contend that an actual amendment occurred. Turning to Simms's constructive amendment argument, the clerical error here does not amount to a constructive amendment. In prior cases, we have recognized constructive amendments where the defendant was convicted of a crime or event different from that charged in the indictment. *See, e.g.*, *United States v. Hunter*, 558 F.3d 495, 501–02 (6th Cir. 2009) (reversing the conviction where the jury was instructed on possession of a firearm "during and in relation to" drug trafficking, rather than in "furtherance" of drug trafficking as required by the statute); *Combs*, 369 F.3d at 936 (holding that a constructive amendment occurred where the jury instruction broadened the scope of liability from "possession" of a firearm to "use" of a firearm); *United States v. Ford*, 872 F.2d 1231, 1236 (6th Cir.

1989) (finding a constructive amendment where the jury conviction could have rested on an event different from that charged in the indictment). But Simms was both charged with and convicted of the same crime and event—the foot chase occurring in November 2005. Thus, no constructive amendment occurred.

Nor does the error rise to the level of a reversible variance. The government was clearly sloppy in its prosecution of this case, but reversal is not necessary because Simms has not carried his burden of showing that his substantial rights have been affected. *Kuehne*, 547 F.3d at 685. Simms claims that his Sixth Amendment right to notice of the charges against him were violated due to the error in the electronic indictment. Under the Sixth Amendment, "a criminal defendant has the right 'to be informed of the nature and cause of the accusation' against him." *United States v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000) (quoting U.S. Const. amend. VI). The Sixth Amendment's Notice Clause gives a defendant the opportunity to adequately prepare a defense by knowing the charges against him. *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002). Simms's claim of a constitutional violation is simply not supported by the record. Defense counsel admits that he first became aware of the indictment error early in the trial. Further, the record indicates that numerous references were made to the offense date throughout the trial, including many by Simms's own attorney, and all of the references used the November 2005 date. Additionally, the government read a correct version of the indictment, containing the November 2005 date, during its opening statements. Finally, Simms had the benefit of pretrial discovery and was therefore apprised of the correct offense date when he learned that the government intended to use the audio recordings from his November 2005 stay in the Richland County jail. In short, Simms

has not shown that the date error in the electronic indictment deprived him of his ability to adequately prepare a defense. *See Cor-Bon Custom Bullet Co.*, 287 F.3d at 580.

## B.     Admission of Copied Audio Recordings

We review the district court's evidentiary decisions for an abuse of discretion. *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 715 (6th Cir. 2005). "An abuse of discretion occurs where the district court clearly erred in its judgment after weighing the relevant factors, improperly applied the correct law, or inappropriately used the wrong legal standard." *Id.* (internal quotations omitted). The Federal Rules of Evidence require evidence to be authenticated or identified through a showing "sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). By way of example, this can be satisfied with testimony from a witness with knowledge of the matter. Fed. R. Evid. 901(b)(1). For voice identification, opinion testimony by someone who heard the voice "at any time under circumstances connecting it with the alleged speaker" can be used for authentication. Fed. R. Evid. 901(b)(5).

Simms essentially claims two errors with the district court's admission of the CD into evidence. He first argues that Exhibit 3, the CD admitted at trial, was not properly authenticated because it was a copy of a copied CD, and the captain who made the copy did not testify at trial. For audio recordings to be admissible, the district court must be satisfied as to the general trustworthiness of the recording, and a proper foundation must be established either through chain of custody or testimony establishing the accuracy of the evidence. *United States v. DeJohn*, 368 F.3d 533, 542–43 (6th Cir. 2004). We have previously upheld the admission of copied audio recordings where a proper foundation was laid as to the copies' accuracy and authenticity. *See, e.g.*, *DeJohn*,

368 F.3d at 543 (upholding admission of copied tape recordings where a witness testified as to the process used to obtain the wiretap, monitor the conversations, log the results, and copy portions from the original); *United States v. Segines*, 17 F.3d 847, 854 (6th Cir. 1994) (upholding admission of a composite tape where a witness testified as to how the composite was made). In this case, the computer specialist from the Richland County Sheriff's Department testified about the process used to record inmates' conversations and to copy Simms's conversations from the jail's server. In addition, a detective with the Sheriff's Department identified Exhibit 3 as being a copy of the CD copied from the jail's server. While the testifying detective was not present when Exhibit 3 was made, he identified the handwriting on the front of the CD as belonging to that of the captain who made the copy, and he testified that he listened to the first copy and portions of the second copy. Simms claims that this testimony is not sufficient because the captain who copied the CD did not testify and the audio recordings could have been altered during copying. This argument, however, does not implicate the CD's admissibility but instead goes to the weight that should be attributed to it. *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997).

Simms's second argument is that the voices on the CD were not properly identified at trial. When the speaker's identity is at issue, "[t]he standard for the admissibility of an opinion as to the identity of the speaker is merely that the identifier has heard the voice of the alleged speaker at any time." *United States v. Cooke*, 795 F.2d 527, 530 (6th Cir. 1986) (quoting *United States v. Rizzo*, 492 F.2d 443, 448 (2d Cir. 1974)). To identify the voices on the CD, the government offered the testimony of a detective with the Richland County Sheriff's Department as well as an officer with the Ohio Adult Parole Authority. Both witnesses identified the voices on the CD as belonging to

Simms and his girlfriend based on prior conversations that the officers had with the two. Simms

claims this identification was not sufficient because the witnesses had last heard the voices when the

case was under investigation, which was two years before the trial. But this argument lacks merit

because the Federal Rules of Evidence allows voice identification by someone who became familiar

with the voice *at any time* and does not place a time limitation on the familiarity. Fed. R. Evid.

901(b)(5) (emphasis added). Taken as a whole, the district court did not abuse its discretion in

admitting the CD into evidence.

### III.

For the foregoing reasons, we **AFFIRM** Simms's conviction of being a felon in possession

of a firearm.