NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0421n.06

Case No. 21-4065

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="2"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Plaintiff-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td>v.</td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE SOUTHERN DISTRICT OF</td></tr>
<tr><td>ANDREQIO STEVENS,</td><td>)</td><td>OHIO</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Defendant-Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>OPINION</td></tr>
</table>

**FILED**
Oct 20, 2022
DEBORAH S. HUNT, Clerk

Before: SUTTON, Chief Judge; BOGGS and KETHLEDGE, Circuit Judges.

SUTTON, Chief Judge. Andreqio Stevens threatened a group of children with a pistol. When officers arrived in response, he fled into his apartment. After an hour-long siege, he surrendered to police. All of this led to a felon-in-possession guilty plea and a sentence of 60 months. Stevens appeals the denial of his motions to dismiss the indictment and to suppress the discovery of his gun. We affirm.

Cincinnati police responded to multiple calls reporting that Stevens was waving around a gun and threatening residents in an apartment parking lot. As soon as Stevens spotted the police, he ran inside the building. Officers followed seconds later. One officer moved around the complex to cover the back staircase and exit. Another heard Stevens shut a door on the third floor, which contained four units. Officers performed consent searches on three of the units, evacuating the residents and confirming that Stevens was not present. They heard movement inside the final unit

but did not receive a response. A second-floor resident told officers that he lived directly below that unit, that he heard its door shut immediately before police arrived, and that his female relative lived there with her boyfriend. Thinking Stevens was armed and barricaded in the unit, the police called SWAT to the scene.

SWAT established a secure perimeter, and an off-scene detective began preparing a search warrant. More than an hour into the siege, Stevens asked from inside the unit whether the officers had a warrant. An officer (falsely) responded in the affirmative, prompting Stevens to surrender and permitting his girlfriend to exit the unit.

Soon after Stevens surrendered, a detective drove the warrant application to the home of a judge who reviewed and signed it. The warrant affidavit contained this information: A man threatened bystanders with a gun in an apartment parking lot; he fled to the third floor when approached by officers; the officers surrounded the building; the officers searched the other apartments and evacuated anyone in them; the officers unsuccessfully attempted to contact the suspect; some neighbors stated that the man with the gun lived with his girlfriend in the unit; and ultimately a man inside surrendered to officers.

Once the warrant was signed, the SWAT team entered the apartment to conduct a protective sweep. The SWAT officers confirmed that no one was there, after which other officers entered the apartment and found a gun hidden in an ottoman. Federal agents determined that the gun was manufactured in Ohio, sold in South Carolina, and resold in Kentucky. A grand jury charged Stevens with being a felon in possession of a firearm "in and affecting commerce." R.3 at 1. Stevens filed a motion to dismiss the indictment and a motion to suppress the gun. The dismissal motion claimed that proof the gun traveled across state lines was insufficient to demonstrate it was "in or affecting commerce"; the suppression motion claimed that the officer's lie tainted the search

2

warrant. The district court rejected both motions. Stevens pleaded guilty, received a sentence of 60 months, and reserved the right to appeal the denial of both motions.

*Motion to dismiss the indictment.* Stevens challenges the jurisdictional basis for his indictment. Federal law makes it unlawful for a felon to (1) "ship or transport in interstate or foreign commerce . . . any firearm or ammunition," (2) "possess in or affecting commerce, any firearm or ammunition," or (3) "receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). Stevens was charged with possessing a firearm in or affecting commerce. He stipulated that his gun previously traveled across state lines.

*Scarborough v. United States* teaches that the requirement that a gun have been "in commerce or affecting commerce" is met by proof that the gun "previously traveled in interstate commerce." 431 U.S. 563, 566–67 (1977). No surprise, we have said the same thing. We indeed have held that a stipulation like the one provided by Stevens—that the gun traveled in interstate commerce—suffices "to meet § 922(g)(1)'s 'in or affecting commerce' requirement." *United States v. Chesney*, 86 F.3d 564, 570–72 (6th Cir. 1996); *see United States v. Murphy*, 107 F.3d 1199, 1211 (6th Cir. 1997); *United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005), *abrogated on other grounds by United States v. Vanhook*, 640 F.3d 706 (6th Cir. 2011); *see also United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *2 (6th Cir. Mar. 7, 2022). The Sixth Circuit's pattern jury instructions come to a similar conclusion. Sixth Circuit Pattern Jury Instruction 12.01(1)(D).

Stevens claims that the government mixed and matched the charged offense with the wrong interstate commerce element. One premise of his argument may be correct, but the conclusion is not. Yes, § 922(g)(1) contains three separate offenses: transport, possession, and receipt. And

3

yes, the statute uses different language to describe the interstate element for the "possession" offense (that the gun be "in or affecting commerce") from the language it uses to describe the "receipt" requirement (that the gun have been "shipped or transported in interstate or foreign commerce"). 18 U.S.C. § 922(g)(1). But the government did not pair the charged offense with the wrong interstate commerce requirement. It charged Stevens with possession of the gun, and it charged him with possession of a gun in or affecting commerce. That is just what the statute requires. 18 U.S.C. § 922(g)(1). And that makes *United States v. Combs* one significant step removed from this case. 369 F.3d 925 (6th Cir. 2004). In that indictment under 18 U.S.C. § 924(c), the government charged Combs with possession of a firearm "during and in relation to," not "in furtherance of," a drug trafficking offense, mistakenly matching the conduct of "possess[ing]" a gun with the standard for "us[ing]" one. *Combs*, 369 F.3d at 934.

Further afield is Stevens' invocation of *Mathis v. United States*, 579 U.S. 500 (2016), which he did not raise below. *Mathis* drew a distinction between criminal statutes that identify distinct offenses and different means of committing the same offense. *Id.* at 505–07, 517–19. But it makes no difference here whether § 922(g) lists different means of committing the same offense or three different offenses. Either way, the government satisfied the more difficult of the tests by showing that the gun in fact had traveled in commerce. In Stevens' words, even though "the Government tracked the language of the statute" in the indictment, "it admitted in its pretrial filing it intended to prove the jurisdictional element not through the weapon being in or affecting interstate commerce, but that it had previously traveled in interstate commerce," which "tracks the language of the third offense" in the statute. Reply Br. 4–5. His apparent point is that the government assumed the burden of meeting the interstate commerce element of the transportation or receipt offenses, not the possession offense. But to the extent there is a difference between the

jurisdictional prerequisites of the three provisions, *Chesney* shows that "in or affecting commerce" is satisfied merely by prior transportation across state lines and is the broader term. 86 F.3d at 570–72; *see also Torres v. Lynch*, 578 U.S. 452, 457 (2016) (explaining that "affect commerce" and "in commerce" are "terms of art" that invoke Congress's "authority over interstate commerce" and "spell[] out the warrant for Congress to legislate"); *United States v. Wyatt*, 853 F.3d 454, 458 (8th Cir. 2017) ("'[I]n or affecting commerce' is a term of art that indicates a congressional intent to invoke the full extent of its commerce power."). We know from *Wickard* that an item may affect interstate commerce without being transported across state lines. *Wickard v. Filburn*, 317 U.S. 111, 118–29 (1943). Prior transportation across state lines is thus merely one "particular method" by which a gun "ha[s] been in, or affected, commerce." *Wyatt*, 853 F.3d at 457. Because Stevens concedes the gun traveled across state lines, the government properly charged him with possessing a firearm "in or affecting commerce." 18 U.S.C. § 922(g)(1).

*Motion to suppress*. "[N]o Warrants," the Fourth Amendment says, "shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." In evaluating a request for a search warrant, a court asks whether "there is a fair probability" that "evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). However, even evidence gleaned from unconstitutional searches will not be suppressed if it would have been discovered anyway. *Utah v. Strieff*, 579 U.S. 232, 238 (2016). This condition is satisfied where the untainted portions of a warrant affidavit establish probable cause. *See United States v. Keszthelyi*, 308 F.3d 557, 573–75 (6th Cir. 2002); *United States v. Cooper*, 24 F.4th 1086, 1095 (6th Cir. 2022). We review with fresh eyes the applicability of the inevitable discovery doctrine and the existence of probable cause absent the tainted materials in a warrant affidavit. *See Keszthelyi*, 308 F.3d at 574.

5

Even stripped of potentially tainted statements, the warrant affidavit contained ample evidence that the gun would be found in the unit. Whether probable cause exists is "a practical, common-sense decision." *Gates*, 462 U.S. at 238. When a fugitive flees into a multi-unit complex, and officers clear all but one unit, common sense dictates that he must be in the final unit. *United States v. Scott*, 520 F.2d 697, 700 (9th Cir. 1975) (affirming probable cause to search seventh and final apartment after officers confirmed fugitives were not in the other six).

The officers established by process of elimination that the gun was likely in the final unit. Stevens fled inside the complex with officers hot on his heels. After hearing him run up to the third floor, officers evacuated the residents of the other three units on that floor, leaving the fourth unit as Stevens' last refuge. Probable cause "does not demand resolving each jot and tittle of metaphysical doubt." *United States v. White*, 990 F.3d 488, 492 (6th Cir. 2021). The remote possibilities that Stevens disposed of his gun in the seconds between fleeing from the officers and entering his unit, or even more outlandishly, escaped out a back stairway before the complex was surrounded, do not undermine the "fair probability" that a search would uncover the gun. *Gates*, 462 U.S. at 238.

Pushing back, Stevens seizes upon another purportedly false statement in the affidavit: "Neighbors [stated] that the man with the firearm lives with his girlfriend in Apt 19." R.18-1 at 1. But even if this statement were false and even if we overlooked Stevens' failure to question its veracity before the district court, it would make no difference. The officers' confirmation that Stevens was not in the other three units was sufficient to provide probable cause that he was in the fourth unit with a gun.

We affirm.

6