UNITED STATES of America, Plaintiff–Appellant (00–6444) Appellee–Cross–Appellant (00–6443, 00–6583)

v.

Barry T. NANCE, Defendant–Appellee (00–6444) Appellant–Cross–Appellee (00–6443, 00–6583)

No. 00–6443, 00–6444, 00–6583.

United States Court of Appeals, Sixth Circuit.

June 20, 2002.

Before MOORE and COLE, Circuit Judges; TARNOW,* District Judge.

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

## OPINION

ARTHUR J. TARNOW, District Judge.

### I. INTRODUCTION

Defendant-appellant Barry T. Nance was charged with six counts of drug and gun-related activity. Count One alleged possession of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Count Two alleged a violation of 18 U.S.C. § 924(c), which prohibits three different combinations of guns and drugs. Counts Three through Six alleged four separate instances of knowing possession of three firearms and ammunition by a convicted felon.

A jury convicted on all six counts, but the District Court granted defendant's motion for acquittal on Count Two, the combination of guns and drugs count. On the other five counts, the District Court sentenced Nance to five concurrent 84–month sentences and five years supervised release.

Three separate appeals have been consolidated. First, Nance appeals the supervised release portion of his sentence as beyond the statutory maximum. Second, the United States Attorney for the Eastern District of Tennessee (the "Government") appeals the District Court's acquittal on Count Two, asserting a rational trier of fact could conclude that Nance violated § 924(c)'s prohibitions against the combination of drugs and guns. Third, the Government cross-appealed Nance's sentence, arguing that even if there were not enough evidence to convict Nance under § 924(c), the district court should have enhanced Nance's sentence two levels under U.S.S.G. § 2D1.1(b)(1) for the possession of guns in connection with a drug-trafficking crime. For the reasons stated below, we AFFIRM the district court on all three issues.

### II. FACTUAL HISTORY

On June 12, 1999, Nance and his girlfriend, Monica Whitt, were involved in an argument, and the Oak Ridge Police were called. The police left after receiving assurances from Whitt that she was fine and that the argument was resolved. However, after the police left, the fight resumed, and Nance hit Whitt and threatened her with a gun. She ordered him to leave, and he started packing his belongings with the help of two friends. While he was removing his belongings, Whitt called the police again to report the assault. When the police arrived, about an hour after their previous visit, Nance was in the parking lot of the apartment building with two males near a truck. The truck contained a bed and some furniture. One officer went upstairs to talk to Whitt. The officer observed a mark on Whitt's face. At that time, Whitt told the officer that Nance had drugs in his pocket and guns in his vehicle. Due to the mark on Whitt's face, the officers arrested Nance.

The police searched Nance's pockets and his car. In his pockets, the police found 10.5 grams of crack cocaine, a small amount of marijuana, a small amount of powder cocaine, a small scale, and $2,230 cash in his wallet. In the car, police found three guns, a flak jacket, and some ammunition. One of the guns, a loaded Lorcin nine millimeter semi-automatic handgun, was in a shoe box in the backseat within the driver's reach. The other two guns, a 12–gauge shotgun and a loaded .38 caliber revolver, were in the trunk.

The indictment on Count One did not allege a specific amount of drugs. However, the indictment did state that Nance was being charged under 21 U.S.C. § 841(b)(1)(B), which prohibits possession of over 5 grams of crack. The jury returned a special verdict finding beyond a

reasonable doubt that defendant possessed crack in excess of 5 grams with the intent to distribute. The jury convicted on all six counts, but the District Court granted defendant's motion for acquittal on Count Two. The government moved for a two-level enhancement due possession of a firearm in connection with a drug offense, but the District Court denied the motion. Three appeals followed.

## III. DISCUSSION

There are three issues for our consideration: 1) whether the district court committed plain error in sentencing Nance to five years supervised release; 2) whether the district court erred in acquitting Nance on Count II, carrying firearms during and in relation to drug trafficking or possessing firearms in furtherance of drug trafficking; and 3) whether the district court committed clear error by not enhancing Nance's sentence by two levels for possession of a weapon in connection with his drug offense under U.S.S.G. § 2D1.1(b)(1).

A.  Whether the district court committed plain error in sentencing Nance to a term of five years supervised release.

1. *Standard of Review*

Since Nance did not object at the time of sentencing, this Court must apply plain error review. *United States v. Cotton*, —— U.S. ——, ——, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002); *United States v. McGahee*, 257 F.3d 520, 531 (6th Cir.2001). Under plain error review, an appellate court can correct an error not raised in the trial court if there was (1) error, (2) that was plain, and (3) the error affected substantial rights. *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)); *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir.

1998). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544 (internal citations omitted); *see also Koeberlein*, 161 F.3d at 949.

Nance acknowledges that under the law of this Circuit, plain error review applies. He argues, however, that since the Government erred in failing to include the drug amount in the indictment, harmless error should apply instead, with the burden of showing harmlessness on the Government. The argument is based on notions of fairness, that where the Government made the error, the defendant should not have to shoulder the burden of showing plain error. Nance cites *United States v. Jackson*, 214 F.3d 687 (6th Cir.2000) in support of his argument. Nance argues that in *Jackson*, this Court found a *Jones* violation, noted the Government's failure to assert harmless error review, and suggested that harmless error might apply in such circumstances. Nance asserts that the present case involves a similar fact situation.

■ Nance's argument that harmless error should apply ultimately fails. First, Nance could have avoided plain error review by objecting at sentencing. Plain error review seeks to strike a balance between the need for finality with the desire to correct "miscarriages of justice." *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Thus, plain error review reflects "a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." *Id.* Nance's argument com-

pletely undermines plain error review, since it would apply to every alleged governmental error. Second, and more importantly, *Jackson* does not support Nance's argument. In *Jackson*, the defendant objected to the error at the hearing. 214 F.3d at 689. Here, defense counsel made no such objection. In addition, in *Jackson*, the Government failed to assert the alleged error should be subject to the harmless error standard. *Id.* at 690. By contrast, here, the Government has asserted plain error review applies. Thus, the *Jackson* case is inapposite to these facts. Accordingly, we review the district court's imposition of a supervised release term of five years for plain error.

### 2. Analysis

Nance challenges the term of five years supervised release imposed by the district court.[1] Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), Nance argues that since the indictment failed to charge the amount of drugs in the indictment, he stands convicted of the lesser offense contained in 21 U.S.C. § 841(b)(1)(C) ("Class C felony"),[2] rather than 21 U.S.C. § 841(b)(1)(B) ("Class B felony").[3] Under the Class C felony provisions, he argues that he should have been given no more than three years supervised release, under 18 U.S.C. § 3583(b), rather than the five years the district court imposed. The Government counters that even assuming Nance was only properly convicted of a Class C felony, the five year term of supervised release is still proper under 21 U.S.C. § 841(b)(1)(C).

Therefore, there are two issues raised by Nance's argument: 1) was he convicted of a Class C rather than a Class B felony, and if so, 2) does 21 U.S.C. § 841(b)(1)(C) or 18 U.S.C. § 3583(b) control? On question one, we will assume for the sake of argument that Nance was merely convicted of a Class C felony.[4]

On question two, Nance argues there is an apparent conflict between the supervised release term allowed by § 3583(b) and the term allowed by § 841(b)(1)(C). Consequently, under the rule of leniency, he contends that the lesser term found in § 3583(b) should be imposed instead.

---

1. He is only challenging the supervised release term, not the 84 months imprisonment term.

2. If a defendant possessed less than five grams of crack, he is sentenced under 21 U.S.C. § 841(b)(1)(C). The statute mandates an imprisonment term of not more than 20 years and a term of at least three years supervised release.

3. If a defendant possessed five grams or more of crack, he is sentenced under 21 U.S.C. § 841(b)(1)(B). The statute mandates an imprisonment term of not less than five years and not more than 40 years and a term of at least four years supervised release.

4. It is by no means clear that Nance wins on this argument, though. While he is correct that the specific amount of drugs was not contained in the indictment, the Class B felony statute, 21 U.S.C. § 841(b)(1)(B) was cited, giving him notice that he could be convicted under the higher statute. In addition, the jury found by special verdict the specific amount of drugs that Mr. Nance possessed beyond a reasonable doubt. Both of these things may cure the *Apprendi* issue Nance raises. *Cf. United States v. Cotton*, — U.S. —, —, 122 S.Ct. 1781, 1786, 152 L.Ed.2d 860 (2002) (holding that failure to allege the amount of drugs in the indictment was not plain error where there was "overwhelming" and "uncontroverted evidence" of defendants' guilt). However, since we find that even under the Class C felony provisions, the district court did not err in imposing a five year term of supervised release, the Court declines to rule on the *Apprendi* issue.

The pertinent provision of 18 U.S.C. § 3583(b) provides:

Except as otherwise provided, the authorized terms of supervised release are—(1) for a Class A or Class B felony, not more than five years; (2) for a Class C or Class D felony, not more than three years . . . .

The pertinent provision of 21 U.S.C. § 841(b)(1)(C) provides:

Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such a term of imprisonment . . . .

█ Nance concedes that the apparent conflict between the two provisions has been resolved against him in this Circuit; he is preserving the issue for possible Supreme Court review. In *United States v. Page*, this Court held that the higher term of supervised release provided in 21 U.S.C. § 841(b)(1)(C) prevails over 18 U.S.C. § 3583(b). 131 F.3d 1173, 1180 (6th Cir. 1997), *abrogated on other grounds, Johnson v. United States*, 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000). The Court reasoned that "except as otherwise provided" at the beginning of § 3583(b) means that § 3583(b) only applies in the absence of a more specific provision. *Id.* When there is a more specific provision, such as § 841(b)(1)(C) in this case, § 3583(b) gives way. *Id.* at 1179. The

*Page* Court was persuaded because, when Congress enacted enhanced drug penalties, including § 841, they simultaneously added the words "except as otherwise provided" to § 3583(b) so the statutes would not conflict. *Id.* at 1178. Thus, Congress was aware of the conflict and synthesized the statutes by adding the "except as otherwise provided" language. Further, *Page* held that, giving meaning to the words "at least" in § 841(b)(1)(C), means that a higher term than three years can be imposed; "otherwise the words 'at least' have no meaning." *Id.* at 1180. *Accord United States v. Abbington*, 144 F.3d 1003, 1006 (6th Cir.1998). Applying the logic of our prior precedents, we conclude that even under a Class C felony, the district court's imposition of five years supervised release was proper.

B. Whether the District Court Erred in Granting Nance's Motion for Acquittal of Count Two (§ 924(c)(1)).

Count Two of the indictment charged Nance under 18 U.S.C. § 924(c). There are three bases for convicting under 18 U.S.C. § 924(c)(1)(A): 1) use a firearm during and in relation to drug trafficking; 2) carry a firearm during and in relation to drug trafficking; or 3) possess a firearm in furtherance of drug trafficking.[5] The jury convicted Nance on Count Two, but the district court granted Nance's motion for

---

**5.** Title 18 U.S.C. § 924(c)(1)(A) provides:

Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance

of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The Government challenges the district court's ruling, asserting that the jury's conviction can stand on either the 'carry during and in relation to' alternative or 'the possess in furtherance of' alternative.

This Court reviews *de novo* the denial or grant of an acquittal motion. *U.S. v. Wall,* 130 F.3d 739, 742 (6th Cir.1997). We examine the evidence in the light most favorable to the prosecution to find if *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Id.* "This court must uphold a jury verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it." *U.S. v. Wells,* 211 F.3d 988, 1000 (6th Cir.2000). Thus, the question is whether "substantial evidence" supports the jury's verdict. If so, the jury verdict should be reinstated.

### 1. *Carrying a firearm during and in relation to drug trafficking*

The Government argues that a rational trier of fact could have found Nance was carrying a firearm during and in relation to drug trafficking since the guns were found in Nance's car, and an expert testified regarding the connection between guns and drugs in drug trafficking crimes. Nance counters that it is not enough to state generally that guns are tools of the drug trafficking trade when there is no other proof connecting the guns and drugs to a drug trafficking offense.

There are two aspects to the 'carry a firearm during and in relation to' prong: 1) carrying the firearm, and 2) it must be "during and in relation to" the drug trafficking. As for carrying the firearm, the "most obvious connotation" is bearing a firearm on one's person. *United States v. Moore,* 76 F.3d 111, 113 (6th Cir.1996). According to the Supreme Court, "carry a firearm" also means "knowingly possess[ing] and convey[ing] firearms in a vehicle, including in the locked glove compartment or trunk of a car, which the person accompanies." *Muscarello v. United States,* 524 U.S. 125, 127, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). The Sixth Circuit, in response to *Muscarello,* has concluded that "the proper inquiry is physical transportation" for whether a firearm was carried. *Hilliard v. United States,* 157 F.3d 444, 449 (6th Cir.1998).[6]

As for 'during and in relation to' the drug trafficking offense, the firearm "must have some purpose or effect with respect to the drug trafficking crime," and "at least must 'facilitate, or have the potential of facilitating,' the drug trafficking offense." *United States v. Layne,* 192 F.3d 556, 571 (6th Cir.1999) (quoting *Smith v. United States,* 508 U.S. 223, 238, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993)). Moreover, this Court has further explained that to satisfy the "in relation to" requirement, "the evidence must support a finding that the firearm furthered the purpose or effect of the crime and that its presence or involvement was not the result of coinci-

---

**6.** The district court cited *United States v. Riascos–Suarez,* 73 F.3d 616, 623 (6th Cir. 1996), holding that "the firearm must be immediately available for use—on the defendant or within his or her reach" for a defendant to convicted under § 924(c)). We note that *Riascos–Suarez* represents the old test for whether a firearm is carried in a vehicle. After *Muscarello,* the firearm no longer must be "immediately available for use." 524 U.S. at 138, 118 S.Ct. 1911; *Hilliard,* 157 F.3d at 449 ("In light of *Muscarello* the language pertaining to immediate availability of a gun in an automobile no longer describes the test."). However, we agree with the district court's ultimate resolution on the carry prong.

dence." *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir.1999).

■ In light of this precedent, the Court finds it is impossible for a rational finder of fact to conclude beyond a reasonable doubt that Nance carried a firearm during and in relation to drug trafficking. First, there were no guns found on Nance's person. Second, Nance was not physically transporting the firearms found in his car. He was not 'accompanying' or 'conveying' the firearms at the time of his arrest. Finally, there is no evidence that the firearms in the car 'facilitated' or 'furthered' drug trafficking. The Government's one expert, while generally making the connection between guns and drugs, does not satisfy reasonable doubt here, where no other evidence of a connection was introduced. Instead, the evidence shows that Nance was moving out of his apartment, so the guns were in his car for that purpose. Thus, the district court did not err in acquitting Nance on the "carry" prong.

### 2. *Possess a firearm in furtherance of drug trafficking*

The Government asserts that a reasonable fact finder could find beyond a reasonable doubt that Nance 'possessed a firearm in furtherance of drug trafficking,' because the police found a loaded semi-automatic pistol, twenty-seven rounds of ammunition, a .38 caliber revolver, and a shotgun in his car when they arrested him for having over five grams of crack. In response, Nance asserts that the phrase "in furtherance of" has a very particularized meaning that requires a greater link between his drug possession and the firearms.

The "possess in furtherance of" language is a relatively recent addition to § 924(c)(1). *See* Criminal Use of Guns, Pub L. No. 105–386, 112 Stat. 3469 (Nov. 13, 1998). According to the House Report, the "possess in furtherance of" language is intended to be a "slightly higher standard" than the two "during and in relation to" prongs. H.R. REP. NO. 105–344, 1997 WL 668339, at *12 (1997). The House Report states that the higher standard operates as follows:

> The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

H.R. REP. NO. 105–344, 1997 WL 668339, at *12 (1997).

*United States v. Mackey* is this Court's only published opinion interpreting the "possess in furtherance of" language. 265 F.3d 457 (6th Cir.2001); *see also United States v. Johnson*, 39 Fed.Appx. 114 (6th Cir.2002) (unpublished table disposition). After reviewing the House Report, the *Mackey* Court stated, "[b]y requiring that the possession be 'in furtherance of' the crime, Congress intended a specific nexus between the gun and the crime charged." *Id.* at 462. One way to demonstrate 'possession in furtherance' is by showing the guns were strategically located for quick and easy use. *Id.* The *Mackey* Court also recognized as helpful the five factors identified by the Fifth Circuit in *United States v. Ceballos–Torres*, 218 F.3d 409, 414–15 (5th Cir.2000). The non-exclusive list of factors includes: 1) whether the firearm was loaded; 2) the type of firearm; 3) whether the weapon was stolen or legitimately possessed; 4) the type of drug activity conducted; and 5) the time and

circumstances under which the gun was found. *Mackey*, 265 F.3d at 462.

*Mackey* cites an example from the House Report that has particular relevance to our facts:

> The facts of the *Bailey [v. United States*, 516 U.S. 137, 147, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)] decision... provide a good example. The Committee believes that the evidence presented by the government in that case may not have been sufficient to sustain a conviction for possession of a firearm "in furtherance of" the commission of a drug trafficking offense. In that case, a prosecution expert testified at Mr. Bailey's trial that drug dealers frequently carry a firearm to protect themselves, as well as their drugs and money. Standing on its own, this evidence may be insufficient to meet the "in furtherance of" test. The government would have to show that the firearm located in the trunk of the car advanced or promoted Mr. Bailey's drug dealing activity. The Committee believes that one way to clearly satisfy the "in furtherance of" test would be additional witness testimony connecting Mr. Bailey more specifically with the firearm.

*Id.* (quoting H.R. REP. NO. 105–344 (1997), 1997 WL 668339, at *12).

█ Similarly, in our case, the only facts linking the guns to the drugs is the general testimony by a DEA agent stating that drug traffickers usually have guns to facilitate trafficking. There are no specific facts linking Nance's guns to the drugs found on his person. In fact, the evidence shows the guns were in the car because Nance was moving. Applying the *Cebballos–Torres* factors, while one of the guns

was loaded, they were not stolen, near the drugs, or immediately accessible. In addition, the drugs were found due to Whitt's tip, rather than from leads arising out of Nance's drug possession. Without more, Nance's possession merely constitutes "the presence of a firearm in an area where a criminal act occurs," which the House Report indicated "is not a sufficient basis for imposing this particular mandatory sentence." H.R.Rep. No. 105–344 (1997), 1997 WL 668339, at *12. Thus, the district court correctly found no reasonable jury could convict Nance under the possession in furtherance of prong.

C. Whether the district court committed clear error in refusing to enhance Nance's sentence by two levels for possession of a weapon in connection with a drug offense under U.S.S.G. § 2D1.1(b)(1).

When one is convicted of a drug crime, United States Sentencing Guideline § 2D1.1(b)(1) calls for a two-level sentencing enhancement when the defendant also possessed a weapon. U.S.S.G. § 2D1.1(b)(1) ("If a dangerous weapon was possessed (including a firearm), increase by 2 levels."). The commentary to § 2D1.1(b)(1) states that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, n. 3.

Under Sixth Circuit precedent, when deciding whether to enhance the sentence two levels for possession of a weapon under Guideline § 2D1.1(b)(1), the Government must first show by a preponderance that 1) a weapon was possessed or constructively possessed,[7] 2) during the com-

---

7. Constructive possession of a firearm means having "ownership, or dominion or control" over the firearm, "or dominion over the

premises" where the firearm is found. *United States v. Hough*, 276 F.3d 884, 894 (6th Cir.

mission of the offense. *United States v. Hill,* 79 F.3d 1477, 1485 (6th Cir.1996). If the Government does so, the burden shifts to defendant to show that it is "clearly improbable" that the weapon was connected to the drug offense. *Id.*

The district court concluded that the connection between the gun and drugs was clearly improbable and declined to enhance the sentence. The district court reasoned:

> The court finds that an adjustment to the offense level pursuant to United States Sentencing Guidelines § 2D1.1(b)1 is not applicable. At the time of the defendant's arrest he was in the parking lot of an apartment building. The firearms were found in the defendant's vehicle. But he was not in close proximity to the vehicle at the time of his arrest. No drugs were found in the vehicle. And there was no testimony that anyone had seen the defendant sell drugs from the vehicle or that anyone had ever seen the defendant sell drugs at all.
>
> It is clearly improbable that the weapons were connected with the offense of possession with the intent to distribute cocaine base. The court will deny the government's recommendation.

We review for clear error the district court's factual determination that Nance did not possess a weapon during a drug trafficking crime. *U.S. v. Peters,* 15 F.3d 540, 546 (6th Cir.1994). This deferential standard applies since the district court has the opportunity to weigh the credibility of the witnesses. *Id.* The district court's decision should be upheld as long as it is supported by a preponderance of the evidence. *United States v. Ivery,* 999 F.2d 1043, 1045 (6th Cir.1993); *see also Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").

In *Peters,* the Sixth Circuit found that the district court's refusal to apply enhancement was not clearly erroneous where the gun was found in the dresser and the cocaine was found on top of that dresser. 15 F.3d at 546. *See also United States v. Siebe,* 58 F.3d 161, 162 (5th Cir. 1995) (§ 2D1.1(b)(1) enhancement does not apply for guns seized in defendant's residence when there was no evidence that drug activity occurred there). Similarly, here, as the district court indicated, Nance was standing in a parking lot, away from his car. There were no drugs found inside the car. The testimony did not show that the car was used for trafficking; instead, it suggested the guns were only in the car because Nance was moving. More importantly, there was no testimony that anyone ever saw the defendant selling drugs, much less using a gun while selling them. The only evidence that made this a drug trafficking crime was the testimony of the expert stating that the amount of crack Nance had was consistent with trafficking. Given our deferential standard of review, we uphold the district court's refusal to apply a two-level enhancement under § 2D1.1(b)(1).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court on all three appeals: the imposition of five years supervised release, the acquittal on Count Two, and the decision not to impose a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for pos-

2002) (quoting *United States v. Sanchez,* 928 F.2d 1450, 1460 (6th Cir.1991)).