**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  06a0470n.06
Filed:  July 6, 2006

**Case No. 04-4186**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| RODNEY NICHOLS, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

**BEFORE:  BOGGS, Chief Judge; and BATCHELDER, Circuit Judge; COHN[*], District Judge.**

**ALICE M. BATCHELDER, Circuit Judge.**  The appellant, Rodney Nichols, challenges the district court's denial of his motion for acquittal on Counts I and II of his indictment and its qualification of police officers as experts during the trial.  Because we find that a rational juror could have concluded beyond a reasonable doubt that Nichols was guilty of both counts, and because we find that the officers were properly qualified, we affirm the judgment of the district court.

In December of 2003, nineteen-year old Nichols and his girlfriend were passing a quiet evening at home with a film.  According to Nichols, just before midnight, his girlfriend asked him to pick up her prescription asthma medication and a bag of chips from the local drug store.  Nichols

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

agreed because he was looking forward to smoking crack, and his girlfriend, who was concerned for the welfare of her child, forbade it in the house. Nichols put a loaded, sawed-off shotgun in the trunk of his car—because the neighborhood was dangerous—and set out with a bag of crack. Nichols testified that, on his way to the store, he realized that he had forgotten not only his girlfriend's ID card, but also the hollowed-out cigars that he used to smoke crack. He turned around and drove toward his home.

Officers Barnes and George noticed Nichols, who appeared to be going nowhere in particular, because he made several turns without signaling. They stopped him and determined that there was an outstanding warrant for his arrest. Following police procedure, they asked Nichols to sit in the cruiser, and because he had been the only occupant of his girlfriend's car, they impounded it. As part of the impound process, Officer George conducted an inventory of the car. While the inventory was in progress, Nichols told Officer Barnes about the gun in the trunk. He also volunteered that the gun was probably stolen because he had purchased it on the street for fifty dollars. Using its serial number, the officers determined that although the gun had not been reported stolen, Nichols was not its registered owner. According to Nichols, there had been several burglaries in the area and he had purchased the gun to protect his girlfriend and her child, who were, at that moment, at home *sans* gun.

When they arrived at the station house, Officer Barnes and Officer George searched Nichols's person. During the search, they asked him if he was carrying anything illegal. Nichols answered that he might have crack in one of his jacket pockets and, as predicted, Officer George found a bag containing eight rocks of the drug. He left Nichols in Officer Barnes's custody while he processed the evidence. According to Officer Barnes, once Officer George left the vicinity,

2

Nichols said that he had planned to sell the crack because Christmas was coming and he needed money to buy gifts. At trial, Nichols denied the statement and claimed that he had purchased the drug solely for personal use.

A grand jury returned a three-count indictment against Nichols that charged him with violations of 21 U.S.C. § 841(a)(1) and (b)(1)(C), possession of crack cocaine with intent to distribute; 18 U.S.C. § 924(c)(1)(A) and (c)(1)(B)(i), carrying or using a shotgun having a barrel fifteen and one-half inches in length during and in relation to a drug trafficking offense; and 26 U.S.C. §§ 5861(d) and 5871, possession of a weapon made from a shotgun having a barrel fifteen and one-half inches in length that was not registered to him. After trial, a jury found Nichols guilty on all counts. The court sentenced him to twenty-seven months' imprisonment on Counts I and III, to run concurrently with 120 months' imprisonment on Count II. Nichols then filed a motion for acquittal on Counts I and II, which the district court denied. On appeal, Nichols challenges the sufficiency of evidence supporting the verdict in Counts I and II, and he also challenges the district court's qualification of Officers George and Barnes as expert witnesses.

**I.**

Nichols argues that the district court erred by refusing to grant acquittal on Count I based on insufficiency of the evidence. Specifically, Nichols argues that the crack in his possession was solely for personal use, that its amount was commensurate with personal use, and that the government failed to prove that Nichols intended to distribute the drug.

We review the district court's denial of a motion for acquittal *de novo. United States v. Wall*, 130 F.3d 739, 742 (6th Cir. 1997). In doing so, we must "determine whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found

3

the essential elements of the crime beyond a reasonable doubt." *Id*. "The Supreme Court has observed that the granting of a motion of acquittal '. . . will be confined to cases where the prosecution's failure is clear.'" *United States v. Connery*, 867 F.2d 929, 930 (6th Cir. 1989) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)).

Nichols does not dispute that, at the time of his arrest, he was carrying 1.03 grams of crack divided into eight individual rocks. He argues instead, citing *Turner v. United States*, 396 U.S. 398 (1970), that the amount of crack in his possession was insufficient to sustain the verdict against him in the absence of other evidence. In *Turner*, the Supreme Court held that possession of almost fifteen grams of powder cocaine was insufficient, standing alone, to show that the defendant intended to distribute the drug. *Id*. at 423. We find that *Turner* is distinguishable for two reasons. First, it dealt with a large amount of powder, only a small percentage of which was actually cocaine. *Id*. In this case, Nichols was carrying crack, a much different drug. We can make no meaningful comparison between the weight of the powder in *Turner* and the weight of the crack carried by Nichols. Second, the *Turner* case drew a distinction between heroin found in the defendant's possession that had been packaged for resale, which was sufficient to support a conviction, and the powder cocaine that had been packaged in bulk, which was insufficient. *Id*. at 420. Although Nichols packaged his crack in a single bag, it is undisputed that individual rocks, such as those found in Nichols' bag, are the usual mode of resale. Consequently, *Turner* does not compel us to overturn the jury's verdict.

We find that our decision in *United States v. Harris*, 192 F.3d 580 (6th Cir. 1999), more closely fits the facts of this case. In that case, a defendant who possessed 5.9 grams of crack argued that the drug was for personal use. *Id.* at 589. We disagreed and noted that the small amount of

4

crack was "offset by several factors." *Id*. First, the rocks were individually wrapped. *Id*. Second, the defendant was walking in an area known for drug trafficking, displaying a signal known to be associated with drug dealers. *Id*. Finally, the defendant was carrying a pistol. *Id*. We wrote, "while we are mindful of the possibilities that the crack could have been packaged that way when Harris bought it and that he could have just been going for a walk or 'killing time' when he was apprehended, we are convinced that a rational jury could have reasonably found that Harris intended to distribute the crack cocaine in his possession." *Id.*

Nichols' case is not as obvious as the *Harris* case. Nichols' rocks of crack were not individually wrapped, and he was not actively signaling that he was a drug dealer. Nonetheless, viewing the evidence in the light most favorable to the government, we find that a rational trier of fact could have concluded beyond a reasonable doubt that Nichols intended to distribute crack. Nichols was arrested with eight individual rocks of crack in a neighborhood known for drug trafficking. Officers testified that each rock was worth approximately $20 on the street. In addition, the officers found no means of smoking crack either in the car or on Nichols' person. Finally, Officer Barnes testified that Nichols said he intended to sell the crack because he needed money. In light of that evidence, a reasonable jury could have concluded that Nichols' testimony that the crack was for personal use was not credible. We therefore affirm the district court's denial of Nichols' motion for acquittal on Count I of the indictment.

## II.

Nichols next argues that the district court should have granted his motion for acquittal on Count II of the indictment. Specifically, he asserts that the government did not prove that he was carrying a gun in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1).

18 U.S.C. § 924(c)(1)(A) prescribes a minimum penalty for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ." The statute encompasses two offenses: (1) using or carrying a weapon during and in relation to a drug trafficking crime and (2) possessing a weapon in furtherance of a drug trafficking crime. *United States v. Combs*, 369 F.3d 925, 931 (6th Cir. 2004). Nichols was convicted of the first of these two offenses: using or carrying a weapon during and in relation to a drug trafficking crime.

Nichols concedes that he carried a weapon but disputes the jury's finding that he carried it during and in relation to a crime. The Supreme Court has held that "[t]he phrase 'in relation to' is expansive . . . ." *Smith v. United States*, 508 U.S. 223, 237 (1993). The phrase "clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Id*. at 238. Stated differently, "the gun at least must facilitate, or have the potential of facilitating, the drug trafficking offense." *Id*. (internal quotation marks omitted) (brackets omitted). When determining whether a gun was carried during and in relation to a crime,

> we look not just at the defendant's specific intentions at the time but also at the totality of the circumstances surrounding the commission of the crime: the emboldened sallying forth, the execution of the transaction, the escape, and the likely response to contingencies that might have arisen during the commission of the crime.

*United States v. Walls*, 293 F.3d 959, 968 (6th Cir. 2002) (internal quotation marks omitted).

Here, the drug trafficking crime at issue was possession with intent to distribute. Jurors heard testimony that Nichols intended to sell crack, that he was arrested near midnight in a neighborhood known to harbor drug dealers and that he had deliberately placed a sawed-off shotgun in the trunk of his car for protection even though, according to his testimony, he planned only to

6

walk from his car to the drug store and back again. Based on the evidence, a reasonable jury could have concluded beyond a reasonable doubt that the gun had "some purpose or effect" with regard to Nichols' intention to sell crack. *Smith*, 508 U.S. at 238. Specifically, the jury could have found that the gun facilitated Nichols' "emboldened sallying forth" and, because Nichols testified that the gun was for personal protection, that he carried it as a possible "response to contingencies that might have arisen" during his sales. *Walls*, 293 F.3d at 968. We therefore affirm the district court's denial of Nichols' motion for acquittal on Count II of the indictment.

## III.

Nichols' final assignment of error alleges that the district court improperly admitted the expert testimony of Officers George and Barnes. Nichols argues that the officers were too inexperienced with regard to methods of drug use and street dealing to be qualified as experts.

We review the admission of expert testimony for an abuse of discretion. *Harris*, 192 F.3d at 588. Federal Rule of Evidence 702 provides that if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto . . . ." Generally, police officers with the requisite qualifications are permitted to testify as both fact witnesses and expert witnesses. *Harris*, 192 F.3d at 589. Furthermore, "[c]ourts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror." *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996).

The officers' testimony in this case addressed situations that presumably were not within the scope of jurors' experiences; therefore, it was admissible under Rule 702 so long as the officers were

7

qualified to serve as experts. The record does not support Nichols' assertion that the officers were unqualified. Both had been trained in narcotics, and both served in a special narcotics unit. Both had approximately two and one-half years' experience on the job. Officer George had investigated at least eighty cases involving crack, and Officer Barnes had investigated between sixty and eighty such cases. We find these qualifications sufficient. Accordingly, we hold that the district court did not abuse its discretion by allowing the officers to testify.

Based on the foregoing, we **AFFIRM** the judgment of the district court.

**AVERN COHN, District Judge, concurring in part and dissenting in part.**

I.

I agree with Parts I and III of the majority opinion. However, on the facts adduced at trial, I do not think a reasonable jury could find that Nichols carried the shotgun in furtherance of a drug trafficking crime under the standards established for this statute. I disagree with Part II.

II.

Mere possession of a firearm during the course of criminal activity is not enough to support a conviction under § 924(c). United States v. Walls, 293 F.3d 959, 968 (6th Cir. 2002). As the majority recognizes, the Court must consider "the totality of the circumstances surrounding the commission of the crime." Walls, 293 F.3d at 968. The majority then notes the list of potential factors courts should consider. Walls, 293 F.3d at 968.

None of the Walls court's factors are present here. No evidence, other than the drugs, suggested that Nichols was coming from, going to, or otherwise involved in a drug crime when the officers arrested him. Nichols was not waiting for, looking for, or avoiding anyone, or otherwise acting suspiciously. There was no evidence that Nichols attempted to sell, did sell, or intended to sell drugs the day he was arrested. There was nothing for Nichols to escape from and no contingencies to which he could have responded.

The majority mis-states the trial evidence in several important respects. There was no evidence that anyone saw Nichols "sallying forth" during a possible drug transaction; he was driving his car. No one observed Nichols respond, or even speculated as to his need to respond, to "contingencies that might have arisen;" again, he was driving his car. Nichols did not testify that

9

he had the shotgun for protection during drug sales. That Nichols could have done any of these things at some other time is speculation, not a reasonable inference from the facts, and is not evidence supporting his conviction for the § 924(c) crime charged.

Nichols was arrested for driving on a suspended license after being stopped for making a turn without signaling while running an errand. The shotgun and drugs were discovered during subsequent inventory searches; the drugs were not seen in any observed activity. Nichols made no effort to conceal the drugs. He volunteered that he had the shotgun in the trunk before the officer found it. The shotgun was not accessible from the car's interior, according to the undisputed testimony at trial. This meant that it was a poor means of protection during any speculative drug sales. There was no testimony from the officers that drug dealers typically carry firearms, or that a sawed-off shotgun is a drug dealer's weapon.[2] Nichols' possession of the shotgun in the trunk of his car, while possessing on his person relatively small amounts of cocaine he admitted to be intending to sell at some unknown future time, is the only evidence here to support the conviction on count two. The possession of the cocaine and presence of the shotgun were not linked.[3]

---

[2]In United States v. Nance, this Court held that expert testimony linking the firearm to the drugs was insufficient to sustain a jury verdict on a violation of the same statute. 40 F. App'x 59, 66 (6th Cir. June 20, 2002) (unpublished). Not even this general testimony is present here.

Like Nichols, the defendant in Nance did not have the gun on his person, and there was no evidence that the firearm furthered any drug trafficking, despite his conviction for possession with intent to distribute after being found with 10.5 grams of crack cocaine, a small amount of marijuana, a small amount of powder cocaine, a small scale, and $2,230 cash. 40 F. App'x at 61. Nance had three guns in his car, including a semi-automatic handgun within the driver's reach. 40 F. App'x at 61. Also like Nichols, Nance was not trafficking in drugs when he was apprehended; he was moving out of his apartment. 40 F. App'x at 61.

[3] The Ninth Circuit has engaged in a more realistic analysis of analogous facts to both uphold and reverse convictions under § 924(c). United States v. Mann, 389 F.3d 869 (9th Cir. 2004); United States v. Krouse, 370 F.3d 965 (9th Cir. 2004). The Ninth Circuit recently

10

The majority opinion is long on conclusion drawn from speculative facts and short on analysis of the actual facts. I would reverse Nichols' conviction as to Count II for the violation of § 924(c). Obviously there are factual differences in our reading of the case. Be that as it may, it is not out of line to observe that the § 924(c) conviction calls for a sentence of 120 months.[4] Such a sentence under the undisputed facts of this case is grossly unfair.[5]

---

reversed a § 924(c) conviction finding an insufficient "nexus" between the firearm and the drug crime to satisfy the "in furtherance" requirement. United States v. Rios, 2006 WL 1511837, (9th Cir. June 2, 2006).

[4] On Counts I and III, Nichols only received 27 months.

[5] In my experience considering cases at the trial and at the appellate court levels, there seems to be no rhyme or reason to the government's decision to charge a § 924(c) offense separately in lieu of using the presence of a firearm to justify an increased sentence under the sentencing guidelines.