**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  08a0092n.06
Filed:  February 1, 2008

No. 07-3153

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| **v.** | ) | DISTRICT OF OHIO |
| | ) | |
| **JEFFREY DIXON,** | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant.* | ) | |

**BEFORE:**    **KENNEDY, MARTIN, and COLE, Circuit Judges.**

**R. GUY COLE, JR., Circuit Judge.**  Defendant-Appellant Jeffrey Dixon appeals his sentence following a guilty plea for attempting to possess with intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, and 18 U.S.C. § 2. Specifically, Dixon argues that the district court erred when it applied a two-level upward adjustment for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1) and when it declined to apply the safety-valve reduction found in U.S.S.G. § 5C1.2(a).  For the reasons below, we **AFFIRM** the district court's sentence.

**I. INTRODUCTION**

**A. Facts**

On July 28, 2000, the Drug Enforcement Agency ("DEA") in Miami, Florida, arrested several individuals for conspiracy to distribute cocaine. One of these individuals agreed to cooperate with the DEA and arranged a sale of sham cocaine to Dixon.

At some time on October 2, 2000, Dixon drove a 1996 Volvo to a car wash located at 706 West 3rd Street in Dayton, Ohio, where the delivery of the cocaine was to be made. When the vehicle containing the sham cocaine arrived, Dixon drove the Volvo out of the car wash and parked it in an adjacent lot to make room for the arriving vehicle. Once inside the car wash, the DEA's confidential informant opened the trunk of his vehicle and exchanged the sham cocaine with cash from Dixon. Following this transaction, DEA agents entered the locked car wash, using a hatchet to gain entry, and arrested Dixon.

While still at the car wash but following his arrest, Dixon was informed that the Volvo would be towed, at which point Dixon requested that the items in the car be removed and returned to either his girlfriend or to his cousin. Officer Chris Weber asked Dixon for a key to the locked Volvo, and upon receipt of the key, Weber proceeded to unlock the vehicle and move the items found inside into the car wash. On the passenger side of the car, Weber found a closed bag containing a loaded Raven MP-25 .25 caliber pistol as well as Dixon's identification. At this point, Weber informed Dixon of his Miranda rights. Dixon then told Weber that the gun was his, that he had possessed it for about ten years, and that he had brought it with him to the car wash.

**B. Procedural History**

On October 25, 2000, Dixon was indicted on a single count of attempting to possess with intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1), 21

U.S.C. § 856 and 18 U.S.C. § 2. On February 24, 2003, Dixon entered a plea of guilty pursuant to a plea agreement. Under the plea agreement, Dixon retained the right to dispute any Government recommendation for a two-level upward adjustment for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1(b)(1). On March 18, 2003, the probation officer completed his initial Presentence Investigation Report ("PSR"), in which he recommended the application of the § 2D1.1(b)(1) enhancement. Dixon objected to the recommended enhancement as well as the PSR's failure to recommend a safety-valve reduction. Dixon filed his sentencing memorandum on September 5, 2003, and the Government filed theirs on September 17, 2003.

The district court conducted a sentencing hearing on September 18, 2003. When addressing the § 2D1.1(b)(1) enhancement, the district court stated the burden of proof as follows:

> [I]t's the burden of the government to prove by a preponderance or greater weight of the evidence that the weapon was possessed, actually or constructively. Once that is shown, then the burden of proof shifts to the defendant in order to demonstrate that it was clearly improbable that the weapon was connected to the offense.

(Joint Appendix ("JA") 226.) The district court rejected Dixon's argument that, even if the transaction had not ended in Dixon's arrest, it would have been improbable that the car containing the gun would have been used to transport the drugs because there was no evidence that Dixon planned on moving the drugs. Instead, the district court stated:

> Here's my point: I will assume arguendo that it is at least equally probable that the controlled substances would have been kept in the car wash as opposed to being removed in the same car in which your client drove to the car wash. That's as far as I'm willing to go.
>
> The problem is that equal likelihood, equal probability does not equate with the defendant's proving discharging his burden of proof that it is clearly improbable that the weapon was used in connection with the offense. And I think it very highly

> logical that this defendant would have removed the controlled substance in the same vehicle in which he drove to the car wash.
>
> . . . .
>
> I am satisfied that, based upon the facts of this case, and the law, that the ruling is correct. The objection [to the enhancement] is overruled.
>
> So, too, is the objection for not recommending the safety valve.

(JA 237-40.) The district court then sentenced Dixon based on an offense level of thirty-two, "plus two for possessing a semiautomatic handgun, a dangerous weapon, the defendant admitted the gun was his, that he'd driven with it to the site," and that "for reasons put on the record already, the Court concludes that it was not clearly improbable" that the gun was possessed for purposes of the transaction. (JA 245.) The district court also found that "the possession of the weapon results in no deduction for the safety valve." (*Id.*) The district court then applied a two-level reduction for acceptance of responsibility and an additional one-level reduction at the Government's recommendation for Dixon's timely notification of an intent to plead guilty, reaching a final offense level of thirty-one. Given his criminal history level of one, the sentencing range was calculated at 108-135 months, but with a ten-year mandatory minimum sentence because of the presence of a weapon and the absence of a safety-valve reduction.[1] The district court then sentenced Dixon to 120 months imprisonment to be followed by a five-year supervised release.

---

[1]Defendants who meet the requirements of the safety valve can receive a sentence that is beneath the mandatory minimum otherwise prescribed. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. Here, if the safety valve were invoked, the adjustment would be two levels downward. U.S.S.G. § 2D1.1(b)(6).

Dixon timely appealed. This Court vacated the sentence and remanded the case on April 18, 2005, for resentencing consistent with *United States v. Bolka*, 355 F.3d 909, 913 (6th Cir. 2004), and *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Dixon*, No. 03-4266 (6th Cir. April 18, 2005) (order).

At the resentencing hearing, the court rejected Dixon's request to apply the safety-valve reduction because Dixon had declined to provide the Government all the information within his knowledge regarding a double homicide that occurred two months prior to the transaction at the car wash. Relying on in camera testimony presented by the prosecution, the district court concluded that this information was sufficient to demonstrate that "the issue of whether the two homicides was in fact related to the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . [and that the proffer] led this Court to conclude, rightly or wrongly, that answering this question was appropriate under prong five of the safety valve." (JA 281-82.) The court then discussed issues regarding the constitutionality of the fifth prong of § 5C1.2(a), and returned to the issue of the safety valve only to state that "this Court finds that the defendant has not satisfied prong five of the safety valve." (JA 283.)

Additionally, the district court found that, even if Dixon had satisfied the fifth prong, he still would fail based on prong two. Here, the district court once again found that Dixon possessed the gun for purposes of both the two-level sentencing enhancement of U.S.S.G. § 2D1.1(b)(1) and prong two of the safety-valve in § 5C1.2(a):

> The two-level enhancement is to be given for possessing of a weapon in the course of the offense. The Court concluded at the time of the initial sentencing and concludes today that it is not clearly improbable that the weapon was connected to

the offense. It was not shown to be clearly improbable that the weapon was connected to the offense. I think the two-level enhancement was properly given and will be given again.

. . . .

[For the purposes of prong two of the safety valve] the Court concludes that the defendant has failed to show that the firearm was not possessed in connection with the offense. We do not know whether that weapon would have in effect been used in connection with the offense if moved to the car or not used in connection with the offense had it remained; the cocaine in the car wash.

Accordingly, we feel the defendant has not proven by a preponderance or greater weight of the evidence that this weapon was not connected to or with the offense.

I would make this statement. That prong two is a non-issue if the Court's ruling on prong five is correct.

(JA 284-87.) Following this analysis, the district court resentenced Dixon to the same sentence as he had originally received: 120 months incarceration to be followed by a five-year supervised release. (JA 290-96.) Once again, Dixon timely appealed.

## II. ANALYSIS

### A. Standard of Review

This Court reviews the "district court's interpretation of a sentencing guideline de novo and a court's factual determination of whether a . . . guideline applies in a particular case under a clearly erroneous standard." *Bolka*, 355 F.3d at 911 (quoting *United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996)). The district court's conclusion under § 2D1.1(b)(1) that the defendant possessed a firearm is a factual finding that this Court reviews for clear error. *See, e.g.*, *United States v. Ables*,

167 F.3d 1021, 1035 (6th Cir. 1999).  A district's court's decision to deny safety-valve relief is also a factual finding reviewed for clear error.  *Adu*, 82 F.3d at 124.

The clearly erroneous standard applies because the district court had the opportunity to assess the witness's credibility.  *United States v. Peters*, 15 F.3d 540, 546 (6th Cir. 1994).  Thus, the district court's decision will be upheld where it is supported by a preponderance of the evidence.  *United States v. Ivery*, 999 F.2d 1043, 1045 (6th Cir. 1993).  As instructed by the Supreme Court, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985).

**B. The District Court's Finding that Dixon Possessed a Firearm is not Clearly Erroneous**

Section 2D1.1(b)(1) of the Guidelines provides that a two-level enhancement is warranted "if a dangerous weapon (including a firearm) was possessed" during the commission of a crime of conviction for which Guidelines section 2D1.1 is applicable.  U.S.S.G. § 2D1.1(b)(1); *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991).  Once the Government demonstrates that a defendant was in possession of a weapon, its burden is satisfied, *see United States v. Snyder*, 913 F.2d 300, 304 (6th Cir. 1990), and "a presumption arises that such possession was connected to the offense."  *Sanchez*, 928 F.2d at 1460 (citing *United States v. Moreno*, 899 F.2d 465, 470 (6th Cir. 1990)).  Possession may be actual or constructive.  *See United States v. Cochran*, 14 F.3d 1128, 1132 (6th Cir. 1994).  To establish constructive possession, the Government must demonstrate that the defendant had "'ownership, dominion, or control' over the [firearm] 'or dominion over the premises'

where the [firearm] is located." *Id*. (quoting *Snyder*, 913 F.2d at 304). The Government need not produce any further evidence to establish a connection between the weapon and the charged conduct to support a § 2D1.1(b)(1) enhancement. Rather, the burden shifts to the defendant to demonstrate that "it is clearly improbable that the weapon was connected to the offense." U.S.S.G. § 2D1.1(b)(1) n.3. If a defendant fails to make such a showing, then a § 2D1.1(b)(1) enhancement is appropriate. *See United States v. Ruiz-Solorio*, 337 F.3d 580, 599-600 (6th Cir. 2003).

This Court has flatly rejected a requirement that the Government prove a connection between the firearm and the charged conduct. *See Sanchez*, 928 F.2d at 1460. Here, Dixon admitted to having possessed the Raven .25 caliber pistol for the prior ten years and admitted to having control over the car in which the gun was found. The car containing the gun had been driven to the site of the transaction by Dixon, and he had parked it in the lot adjacent to the building in which the transaction occurred. Given the deferential standard of review and the evidence demonstrating that Dixon brought the gun to the location of the sale, the district court's finding that Dixon possessed the pistol is not clearly erroneous. *See Ruiz-Solorio*, 337 F.3d at 599 (concluding that the district court's finding of possession was not clearly erroneous where the defendant leased the apartment and had left the firearms in the apartment on the morning of his arrest at another location that was sometimes used for drug trafficking). *See also United States v. Milan*, 218 F. App'x 492, 495 (6th Cir. 2007) (upholding an enhancement for possession where a co-conspirator reported having seen the weapon in a defendant's home and that he had observed that defendant shooting the weapon during the time period of the charged conspiracy); *United States v. Johnson*, No. 99-1797, 2000 U.S. App. LEXIS

33707, *6-7 (6th Cir. 2000) (per curiam) (upholding application of the enhancement for possession of two firearms recovered from the defendant's home where the transaction occurred at a location outside of the home and between the defendant's brother and a confidential informant).

**C. The District Court's Finding that Dixon did not Demonstrate that it was Clearly Improbable that the Gun was Connected to the Offense is not Clearly Erroneous.**

Dixon cites an unpublished opinion, *United States v. Nance*, 40 F. App'x 59 (6th Cir. 2002), in support of his claim that the district court's decision to apply the enhancement was clearly erroneous. *See id.* at 67-68. As in this case, the firearms that the defendant was accused of possessing in *Nance* were found in the defendant's car in the parking lot of the building in which the defendant was arrested. *Id.* The district court in *Nance* found that the defendant had demonstrated that it was clearly improbable that the weapon was used for the offense. On appeal of that decision, this Court stated:

> In *Peters*, the Sixth Circuit found that the district court's refusal to apply enhancement was not clearly erroneous where the gun was found in the dresser and the cocaine was found on top of that dresser. 1 5 F.3d at 546. *See also United States v. Siebe*, 58 F.3d 161, 162 (5th Cir.1995) (§ 2D1.1(b)(1) enhancement does not apply for guns seized in defendant's residence when there was no evidence that drug activity occurred there). Similarly, here, as the district court indicated, Nance was standing in a parking lot, away from his car. There were no drugs found inside the car. The testimony did not show that the car was used for trafficking; instead, it suggested the guns were only in the car because Nance was moving. More importantly, there was no testimony that anyone ever saw the defendant selling drugs, much less using a gun while selling them. The only evidence that made this a drug trafficking crime was the testimony of the expert stating that the amount of crack Nance had was consistent with trafficking. Given our deferential standard of review, we uphold the district court's refusal to apply a two-level enhancement under § 2D1.1(b)(1).

*Id.*

Given the deferential standard of review which we are to employ when reviewing the determination that the enhancement applies, the decision in *Nance* provides little support for Dixon. *See United States v. Keszthelyi*, 308 F.3d 557, 579-580 (6th Cir. 2002). In *Keszthelyi*, the defendant relied on *Peters* for his argument that the district court's finding that the enhancement was applicable was clearly erroneous. The *Keszthelyi* Court stated:

> The defendant relies on our opinion in [*Peters*] for his argument that the district court erred in applying the § 2D1.1(b)(1) enhancement. In *Peters*, we affirmed the district court's decision not to apply a § 2D1.1(b)(1) enhancement where a handgun was found in a dresser that also contained crack cocaine. *Id.* at 546. Despite the factual similarities in the present case, defendant's reliance on *Peters* is unavailing. The *Peters* decision was based upon the high degree of deference afforded to the district court's decision whether to apply the dangerous-weapon enhancement. In *Peters*, the district court made a finding of fact that the gun was not possessed in connection with the drug offense. Although the facts of that case might have permitted the opposite conclusion, we did not believe that the facts were so one-sided that the district court's finding was clear error. *Id.* The *Peters* decision offers little assistance to a defendant when, as was the case here, the district court does apply the enhancement and it is the defendant, as opposed to the government, who appeals.

*Id.* at 579-580 (citing *United States v. Hill*, 79 F.3d 1477, 1486 (6th Cir. 1996)). Thus, as in *Keszthelyi* and *Hill*, this Court must find that the district court's decision to apply the enhancement was clearly erroneous before it can reverse.

We find that Dixon has not met his burden of showing that it was "clearly improbable that the weapon was connected to the offense." U.S.S.G. § 2D1(b)(1), n.3. In determining whether it was probable that a firearm was connected to an offense, a court may consider many factors, including "the proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was

loaded, and any alternative purpose offered to explain the presence of the firearm." *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002). In this case, Dixon's argument is essentially that he did not have access to the gun during the transaction because the transaction occurred inside the locked car wash. However, the district court noted that Dixon was in the car prior to the transaction and would likely have been in the car following the transaction, and that given the location of the gun during the actual exchange of the sham cocaine and the money, it was not clearly improbable that the firearm was connected to the offense. Because the defendant cannot rebut the presumption that his possession of the firearm was connected to the drug conspiracy, enhancement under §2D1.1(b)(1) was not clearly erroneous. *See United States v. Miggins*, 302 F.3d 384, 390-91 (6th Cir. 2002).

**D. The District Court's Finding that Dixon did not Qualify for the Safety Valve is not Clearly Erroneous.**

To qualify for a safety-valve reduction under § 5C1.2(a), a defendant must satisfy the following prongs:

(1)    the defendant cannot have more than one criminal history point;

(2)    the defendant must not have used violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense;

(3)    the offense must not result in death or serious bodily injury of any person;

(4)    the defendant must not have organized or led others in the offense; and

(5)    by the time of the sentencing hearing, the defendant must have "truthfully provided to the Government all information and evidence

> the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement."

U.S.S.G. § 5C1.2(a). The application note to prong five states that "'offense or offenses that were part of the same course of conduct or of a common scheme or plan,' as used in subsection (a)(5), mean[s] the offense of conviction and all relevant conduct." U.S.S.G. § 5C1.2(a) n.3.[2]

This Court vacated Dixon's initial sentence with instructions to the district court to consider the intervening cases of *Bolka*, 355 F.3d at 913-14, and *Booker*, 543 U.S. 220, when sentencing Dixon. (JA 135.) In *Bolka*, this Court found that "the application of a § 2D1.1(b)(1) sentence enhancement does not necessarily preclude the application of a § 5C1.2(a) 'safety-valve reduction.'" 355 F.3d at 914. The Court continued, stating:

> A defendant may be unable to prove that it is clearly probable that the firearm was not connected to the offense-the logical equivalent of showing that it is clearly improbable that the firearm was connected to the offense-so as to defeat a § 2D1.1(b)(1) enhancement. *See United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003) (referring to this standard in its logically equivalent form). However, that same defendant may, nevertheless, be able to prove by a preponderance of the evidence that the firearm was not connected to the offense so as to satisfy § 5C1.2(a)(2). The "clearly improbable" standard is a higher quantum of proof than that of the "preponderance of the evidence" standard. *See Moses*, 289 F.3d at 852 (construing a "preponderance of the evidence" as that which is "more likely than not"); *Johnson*, 344 F.3d at 567 (defining the "clearly improbable" § 2D1.1(b)(1) standard as a difficult one that entails more than showing the existence of a "possible

---

[2] § 5C1.2(a)(1) was amended, effective October 2003 and November 2004, but these amendments have no effect on the applicability of the safety valve to Dixon's offense. *See* U.S.S.G. Appendix C, amend. 651 and 674.

innocent explanation" or a mere probability that the firearm was not connected to the offense). . . . Consequently, a defendant's conduct warranting a § 2D1.1(b)(1) enhancement does not per se preclude that defendant from proving by a preponderance of the evidence that his possession of the firearm was not connected with his offense for purposes of a § 5C1.2 (a) "safety valve" reduction.

*Id.*

Thus, on remand, the district court was required to determine whether Dixon had shown by a preponderance of the evidence that he did not possess the firearm in connection with the sham cocaine transaction. And, as detailed above, this Court reviews the district court's finding regarding this question of fact under the clearly erroneous standard. *See Adu*, 82 F.3d at 124. At the resentencing hearing, the district court stated its reasoning as follows:

> [For the purposes of prong two of the safety valve] the Court concludes that the defendant has failed to show that the firearm was not possessed in connection with the offense. We do not know whether that weapon would have in effect been used in connection with the offense if moved to the car or not used in connection with the offense had it remained; the cocaine in the car wash.
>
> Accordingly, we feel the defendant has not proven by a preponderance or greater weight of the evidence that this weapon was not connected to or with the offense.

(JA 286-87.)

The district court stated at the first sentencing hearing that, at most, Dixon had only demonstrated that it was equally likely that the car would be used to transport drugs. Because a preponderance standard requires more than an equal likelihood, the district court's decision that Dixon did not meet prong two was not clearly erroneous, and the district court's conclusion that Dixon did not qualify for the safety-valve reduction is upheld.

Because Dixon did not qualify for prong two of the safety valve, we need not reach the district court's decision that Dixon additionally did not meet prong five, or its decision to allow Dixon to proffer information for purposes of the safety valve following the first sentencing hearing. *See United States v. O'Dell*, 247 F.3d 655, 677 (6th Cir. 2001). It is enough that we conclude that the district court's finding as to prong two was not clearly erroneous.

### III. CONCLUSION

For the preceding reasons, we **AFFIRM** the district court's sentence.